**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. _____

| | |
|---|---|
| NATHAN DAPEER, on Behalf of Himself and All Others Similarly Situated,<br><br>    **Plaintiff,**<br><br> **v.**<br><br>**NEUTROGENA CORP.,**<br><br>    **Defendant.** | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, Nathan Dapeer ("Plaintiff"), on behalf of himself and all others similarly situated, alleges the following based upon personal knowledge as to allegations regarding Plaintiff and on information and belief as to other allegations:

## INTRODUCTION

1.      This is a civil action seeking monetary damages, restitution, injunctive and declaratory relief from Defendant, Neutrogena Corp. ("Neutrogena" or "Defendant"), arising from its deceptive and misleading labeling and marketing of its Neutrogena Ultra Sheer® Body Mist, SPF 30 ("Neutrogena Body Mist") and the Neutrogena Beach Defense® line of sunscreen ("Neutrogena Beach Defense Sunscreens").

2.      This civil action also seeks monetary damages, restitution, injunctive and declaratory relief from Neutrogena arising out of its deceptive and misleading labeling and

marketing of Neutrogena sunscreen products with a sun protective factor ("SPF") above 50 (the "Neutrogena High SPF Sunscreens").[1]

3.      Plaintiff brings this action individually, and on behalf of all others who purchased Neutrogena Body Mist and/or Neutrogena Beach Defense Sunscreens that were labeled and marketed to provide users with "water resistant" and "water + sun barrier" protection, respectively, against the sun's Ultraviolet A ("UVA") and/or Ultraviolet B ("UVB") radiation (collectively "UV radiation").

4.      Plaintiff also brings this action individually, and on behalf of all others who purchased Neutrogena High SPF Sunscreens that were labeled and marketed to provide users with greater sun protection than SPF 50 sunscreen products.  Neutrogena distributes, markets, and sells numerous over-the-counter ("OTC") sunscreens with SPFs of 55, 60, 70, 85, 100, or 110.

5.      Looking to profit from growing consumer awareness of the damaging health effects of exposure to UV radiation and concern about the necessity to regularly apply or reapply sunscreen throughout the day, especially after physical activity both in and out of the water,

---

[1] The Neutrogena High SPF Sunscreens include: (1) Ultra Sheer® Dry-Touch Sunscreen Broad Spectrum SPF 55; (2) Sensitive Skin Sunscreen Lotion Broad Spectrum SPF 60+; (3) Clear Face Liquid Lotion Sunscreen Broad Spectrum SPF 55; (4) Pure & Free® Baby Sunscreen Stick Broad Spectrum SPF 60; (5) Pure & Free® Baby Sunscreen Lotion Broad Spectrum SPF 60+; (6) Ultra Sheer® Face + Body Stick Sunscreen Broad Spectrum SPF 70; (7) Ultra Sheer® Dry-Touch Sunscreen Broad Spectrum SPF 85; (8) Beach Defense® Sunscreen Lotion Broad Spectrum SPF 70; (9) Beach Defense® Sunscreen Spray Broad Spectrum SPF 70; (10) Wet Skin Kids Stick Sunscreen Broad Spectrum SPF 70; (11) Wet Skin Kids Sunscreen Spray Broad Spectrum SPF 70+; (12) Fresh Cooling Body Mist Sunscreen Broad Spectrum SPF 70; (13) Sport Face Oil-Free Lotion Sunscreen Broad Spectrum SPF 70+; (14) Ultimate Sport® Lotion Sunscreen Broad Spectrum SPF 70+; (15) Age Shield™ Face Lotion Sunscreen Broad Spectrum SPF 70; (16) Ultimate Sport® Spray Sunscreen Broad Spectrum SPF 100+; (17) Age Shield™ Face Lotion Sunscreen Broad Spectrum SPF 110; (18) Ultra Sheer® Dry-Touch Sunscreen Broad Spectrum SPF 100+; (19) Ultra Sheer® Body Mist Sunscreen Broad Spectrum SPF 100+. Plaintiff reserves the right to include other products upon completion of discovery.

Neutrogena deceptively labeled, advertised, and marketed Neutrogena Body Mist to provide "water resistant" protection against the sun's harmful UV radiation when, in fact, it does not because it fails to meet water resistance standards.

6.    Consumers reasonably expect that the SPF label on a sunscreen product claimed to be "water resistant" for a specific amount of time reflects the SPF value of protection one will have during use in water or as a result of perspiration for the amount of time so stated.  For example, because Neutrogena Body Mist has a SPF 30 and claims to be "water resistant" for 80 minutes, consumers reasonably expect that they will have SPF 30 protection during 80 minutes of water or perspiring activity.  Neutrogena is aware of this expectation of consumers, which is embodied in applicable federal law pertaining to the labeling of sunscreen products as "water resistant."

7.    Neutrogena also deceptively labeled, advertised, and marketed Neutrogena Beach Defense Sunscreens to provide "water + sun barrier" protection against the sun's harmful UV radiation when, in fact, it does not.  Consumers reasonably expect that the Neutrogena Beach Defense Sunscreens are waterproof and/or provides the skin with a protective barrier from the effects of and prevent penetration of the sun's harmful UV radiation when in the sun or water.

8.    During all times material hereto, Neutrogena engaged in a common plan and scheme through the use of misleading labeling and advertising claims on Neutrogena Body Mist and Neutrogena Beach Defense Sunscreens to induce consumers to purchase these products based on the "water resistant" and "water + sun barrier" protection claims.

9.    Neutrogena knew or should have known that that the "water resistant" claim was false because Neutrogena Body Mist did not provide SPF 30 level of protection, as stated on the product packaging, for the full 80 minutes of water activity or perspiration.  Indeed, the initial

SPF 30 level of protection afforded consumers who purchased and used the Neutrogena Body Mist product diminishes drastically during 80 minutes of water or perspiring activity.

10.     Likewise, Neutrogena knew or should have known that the "water + sun barrier" claims were false because: (a) the Neutrogena Beach Defense Sunscreens are not waterproof; and (b) the degree or level of UVA radiation protection, if any, is actually provided, was significantly less than the protection provided against the burning effect of UVB radiation.  Thus, Neutrogena Beach Defense Sunscreens did not provide a barrier to the sun's harmful UV radiation.

11.     Neutrogena also deceptively labeled, advertised, and marketed its Neutrogena High SPF Sunscreens as providing superior sun protection than less expensive lower SPF sunscreen products.

12.     During all times material hereto, Neutrogena engaged in a common plan and scheme through the use of misleading labeling and advertising claims on the Neutrogena High SPF Sunscreens to induce consumers to purchase the Neutrogena High SPF Sunscreens based on the artificially inflated SPF values.

13.     Neutrogena knew or should have known that its SPF 55, 60, 70, 85, 100, and 110 representations on its Neutrogena High SPF Sunscreens were false because of the comprehensive scientific evidence that SPF values higher than 50 provide no demonstrable clinical benefit to consumers.  Neutrogena knows the content and effects of the ingredients in its Neutrogena High SPF Sunscreens and knows of the effects these products have on consumers.

14.     Neutrogena knew, or should have known, but failed to disclose, that its Neutrogena High SPF Sunscreens do not provide better UVB sun protection than less expensive lower SPF sunscreen products.

15.     Accordingly, it is through Neutrogena's labeling, advertising, and marketing of Neutrogena Body Mist as providing "water resistant" protection, Neutrogena Beach Defense Sunscreens as providing "water + sun barrier" protection, and Neutrogena High SPF Sunscreens as providing superior UVB protection, that consumers have been deceived.  Plaintiff now brings this suit to end Neutrogena's false, deceptive, and misleading practices and to recover the ill-gotten gains obtained by Neutrogena through this deception.

## JURISDICTION AND VENUE

16.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the members of the putative Classes exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed Classes is a citizen of a different state than Neutrogena.

17.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 because Neutrogena is subject to personal jurisdiction in this District and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in this District.

## PARTIES

18.     Plaintiff Dapeer resides in Miami-Dade County, and at all times relevant hereto, has been a citizen of the State of Florida.  Plaintiff purchased sunscreens that are the subject of this Complaint at various stores throughout Miami-Dade County, Florida.  Plaintiff purchased the Neutrogena Body Mist based upon the "water resistant" claim, which led him to believe that the product provided "water resistant" SPF 30 level of protection for a full 80 minutes after application.  Likewise, Plaintiff purchased the Neutrogena Beach Defense Broad Spectrum SPF

70 Lotion, one of the Neutrogena Beach Defense Sunscreens, based upon the "water + sun barrier" claims, which led him to believe that the product was waterproof and provided "sun barrier" protection from the sun's harmful UV radiation.

19.     Plaintiff purchased the Neutrogena Beach Defense Broad Spectrum SPF 70 Lotion, one of the Neutrogena High SPF Sunscreens, based on the SPF 70 sun protection claims.

20.     As discussed in more detail below, Plaintiff reasonably relied upon the deceptive and misleading "water resistant" and "water + sun barrier" claims in making his decisions to purchase the Neutrogena Body Mist and Neutrogena Beach Defense Sunscreens.

21.     Plaintiff also reasonably relied upon the deceptive and misleading "SPF 70" sun protection claims in purchasing the Neutrogena Beach Defense Broad Spectrum SPF 70 Lotion. Plaintiff would not have purchased Neutrogena Beach Defense Broad Spectrum SPF 70 Lotion had he known that the product does not provide the represented superior sun protection.

22.     Plaintiff suffered injury in that he would not have bought the Neutrogena Body Mist and Neutrogena Beach Defense Sunscreens had he known the truth that the Neutrogena Body Mist was not "water resistant" for 80 minutes, or that the Neutrogena Beach Defense Sunscreens did not provide "water + sun barrier" protection from the sun's harmful UV radiation.

23.     Plaintiff suffered injury by his purchase of a Neutrogena High SPF Sunscreen in that he was deceived into purchasing a Neutrogena High SPF Sunscreen product based on Neutrogena's representations that the product provided superior UVB protection compared to less expensive, lower SPF value products.

24.     Defendant Neutrogena is a Delaware Corporation headquartered in Los Angeles, California, and a subsidiary of the Johnson & Johnson conglomerate.  As one of the world's

leading brands of skin care hair care and cosmetics, Neutrogena distributes its products throughout the United States and to more than 70 countries throughout the world. Neutrogena has revenues that well exceed $1 billion, and upon information and belief, sales from its sunscreen products alone exceed $1 billion.

25.     Neutrogena's line of sunscreen products, including the ones purchased by Plaintiff and members of the putative Classes, are available at retail stores throughout the United States.

## FACTUAL ALLEGATIONS

26.     UV radiation, which are rays in the form of UVA and UVB, is part of the electromagnetic (light) spectrum that reaches the Earth from the Sun. Although some UV radiation is necessary for human life, over-exposure to UV radiation can cause premature aging of the skin, changes in skin color, eye damage, as well as result in other negative health effects. Moreover, research has shown that UV radiation damages the DNA of skin cells, putting people at a higher risk of developing skin cancer.

27.     Consumer sunscreen products ("Sunscreens" or "Sunscreen") are used by consumers to prevent the burning effects from, and reduce the skin's exposure to, UV radiation. Sunscreens prevent the burning effects and reduce the skin's exposure to UV radiation in two ways: (1) absorbing UV radiation by forming a chemical barrier or layer on the skin; or (2) reflecting or scattering part or all of the UV radiation away from the skin.

28.     The SPF designation on Sunscreens indicates how much protection the skin is afforded against sun burning caused by exposure to UV radiation. Sunscreens with higher SPFs filter out more skin burning UV radiation than those with lower SPFs. SFP 30 sunscreen, for example, affords the skin 30 times the natural protection it has against sun burning.

29.     Additionally, the water resistance claims on Sunscreens are required to accurately indicate how much time a user can expect to get the declared SPF level of protection while swimming or perspiring, based on standard testing.  During the relevant time period, there have been two amounts of time that are permitted by the U.S. Food and Drug Administration ("FDA") to be printed on Sunscreen labels: 40 minutes or 80 minutes, provided that certain testing standards are satisfied to substantiate the representations.

30.     The number of skin cancer cases has been rising dramatically due to increased exposure to UV radiation from the sun.  According to a 2013 study by the National Cancer Institute, more than 2 million Americans develop skin cancer each year.  *See* http://www.cancer.gov/cancertopics/types/skin (last visited June 4, 2014).   In addition, the National Cancer Institute estimates that in 2014, approximately 76,000 Americans will be diagnosed with melanoma cancer, of which 9,700 Americans will die as a result of the disease.  *See*   http://www.cancer.org/cancer/skincancer-melanoma/detailedguide/melanoma-skin-cancer-key-statistics (last visited June 4, 2014).

31.     As Americans' lifetime risks for developing skin cancer has steadily risen, so to have revenues from sales of Sunscreens.  According to a 2013 study conducted by IBISWorld, a global market research organization, sales from the purchase of Sunscreens has grown 4.2 percent each year between 2007 and 2012, and currently generates annual revenues that exceed $1 billion.  *See* http://www.ibisworld.com/industry/sunscreen-manufacturing.html (last visited June 4, 2014).

32.     Despite these rising numbers and growing consumer awareness, studies have found a positive link between the use by consumers of Sunscreens and the rise in skin cancer. The studies found that because Sunscreens in fact fail to block all of the sun's harmful rays as

their labeling and advertising have suggested, consumers are being given a false sense of security about the benefits of using Sunscreens, and are staying out in the sun longer based on that false assumption.

### A. Sunscreen Regulatory History.

33.     In 1993, the FDA issued a proposed rulemaking in the form of a tentative final monograph for OTC Sunscreens.  *See Sunscreen Drug Products for Over-the-Counter Human Use*, 58 Fed. Reg. 28194 (May 12, 1993) ("TFM").   The TFM proposed to prohibit manufacturers from making labeling claims concerning UVA protection unless such claims, *inter alia*, were available in labeling prior to the beginning of the OTC Sunscreen review, *i.e.*, the labeling must not be "false or misleading in any particular."

34.     In the TFM, the FDA recognized the importance of accurate UVA labeling on Sunscreen, stating that "the agency believes that claims related to UVA protection are important information for consumers because UVA radiation has been shown to be harmful to the skin in that it contributes to both acute and chronic skin damage."  TFM, 58 Fed. Reg. 28194, 28209.

35.     In 1999, the FDA issued a final rule for OTC Sunscreens, which addressed various aspects of labeling of Sunscreens.  *Sunscreen Drug Products for Over-the-Counter Human Use; Final Monograph*, 64 Fed. Reg. 27666 (May 21, 1999) ("FM").

36.     In the TFM and FM, the FDA made the following findings of fact with respect to UVA labeling claims:

(a)     Use of the term "sunblock" on product labels:

The agency has decided not to include the term "sunblock" in the final monograph and now considers this term nonmonograph. The agency's intention in the tentative final monograph was to provide information to consumers on the method of product performance, not to imply greater protection from using a product labeled as a "sunblock." The agency is concerned that the term "sunblock" on the label of sunscreen drug products will be viewed as an absolute

term which may mislead or confuse consumers into thinking that the product blocks all light from the sun. For example, consumers might view an SPF 15 product labeled as a sunblock as superior to a product labeled as an SPF 30 broad spectrum sunscreen. As nonmonograph labeling, the term "sunblock" cannot appear anywhere in product labeling.

FM, 64 Fed. Reg. 27666 at 27680; and

> (b)   Use of the term "waterproof" on product labels:

The agency is concerned . . . that the term "waterproof" . . . may be confusing or misleading to consumers because of the manner in which consumers may consider this term. The term "waterproof" is defined as 'impenetrable to or unaffected by water.' . . . . The agency believes that the term "waterproof'" could be interpreted by consumers to describe something that is completely resistant to water regardless of time of immersion, a meaning which is not consistent with the meaning of the term in the Panel's recommended monograph. Therefore, the agency is not proposing the labeling claim "waterproof," but is proposing instead the term "very water resistant."

TFM, 58 Fed. Reg. 28194 at 28228; FM, 64 Fed. Reg. 27666 at 27675-76.

37.    In 2001, the FDA stayed the effective date of the FM "until further notice." Pending the effective date of the FM, the FM provides that UVA labeling claims shall be governed by the TFM. FM, 64 Fed. Reg. 27666, 27666-67.

38.    In 2005, Senator Christopher Dodd (D-Conn.) criticized the stay of the FM, citing his concern for the health and safety of consumers and the importance of providing consumers with "clear, accurate, and comprehensive sunscreen labeling as their first line of defense against skin cancer." *See* 151 Cong. Rec. S10,330 at S10,330-31 (daily ed. Sept. 22, 2005) (statement of Sen. Dodd).

39.    In 2005, Congress noted that the FDA had not issued any regulations after the stay of the FM was put into effect, "although skin cancer rates continue to rise, especially among young persons and women."   *See* Conference Report on S.830, FDAMA, 143 Cong. Rec. H10452 (Nov. 9, 1997); H.R. Rep. No. 109-255, 109th Cong., 1st Sess., Tit. VI at 102 (2005).

40.     In 2011, the FDA issued a final rule ("Final Rule") stating, *inter alia*:

[W]e are identifying the terms "sunblock" "waterproof," and "sweatproof" as false and misleading, as we have stated in previous sunscreen rulemakings:

Sunblock (64 FR 27666 at 27679 and 27680);

Sweatproof (58 FR 28194 at 28227 through 28228); and

Waterproof (58 FR 28194 at 28227 through 28228).

We have previously identified these claims as ones that would render a product misbranded but are addressing them again in this document because OTC sunscreen products currently marketed without approved applications continue to contain the claims.

*See Labeling and Effectiveness Testing; Sunscreen Drug Products for Over-the-Counter Human Use; Final Rule*, 76 Fed. Reg. 35620 at 35643 (June 17, 2011).

41.     In addition, the Final Rule specifically prohibits the use of the claim "all day protection" on Sunscreen labeling "regardless of SPF value or broad spectrum protection, without an approved application containing sufficient substantiation to support the claim."  *Id*. at 35631.

**B.  Recent Regulations Pertaining to Neutrogena's "Water Resistant" Claims.**

42.     On June 18, 2012, the Final Rule took effect, mandating restrictions on Sunscreens manufacturers' representations regarding water resistance, which were intended to replace sunblock, sweatproof and waterproof claims.  These restrictions require the labeling to accurately represent to consumers how much time a user can expect to get the declared SPF level of protection while swimming or perspiring, based on standardized testing promulgated by the

11

FDA. The Final Rule permits two alternative time periods on the labels: 40 minutes or 80 minutes. *See* 76 Fed. Reg. at 35628.[2]

43.     The standardized testing is found in 21 CFR §201.327(7), and it prescribes the test a Sunscreen manufacturer must perform before making water resistant claims on its product labels:

> (7) *Determination of water resistance*. The following procedure should be performed in an indoor fresh water pool, whirlpool, and/or hot tub maintained at 23 to 32 °C. Fresh water is clean drinking water that meets the standards in 40 CFR part 141. The pool and air temperature and the relative humidity should be recorded.
>
> (i) *Water resistance (40 minutes)*. The labeled SPF should be determined after 40 minutes of water immersion using the following procedure:
>
> (A) Step 1: Apply the sunscreen as described in paragraph (d) of this section.
>
> (B) Step 2: Perform moderate activity in water for 20 minutes.
>
> (C) Step 3: Rest out of water for 15 minutes. Do not towel test site(s).
>
> (D) Step 4: Perform moderate activity in water for 20 minutes.
>
> (E) Step 5: Allow test sites to dry completely without toweling.
>
> (F) Step 6: Apply the SPF standard as described in paragraph (d) of this section.
>
> Step 1. Expose test sites to UV doses as described in paragraph (e) of this section.
>
> (ii) *Water resistance (80 minutes)*. The labeled SPF should be determined after 80 minutes of water immersion using the following procedure:
>
> (A) Step 1: Apply the sunscreen as described in paragraph (d) of this section.
>
> (B) Step 2: Perform moderate activity in water for 20 minutes.
>
> (C) Step 3: Rest out of water for 15 minutes. Do not towel test site(s).
>
> (D) Step 4: Perform moderate activity in water for 20 minutes.
>
> (E) Step 5: Rest out of water for 15 minutes. Do not towel test site(s).
>
> (F) Step 6: Perform moderate activity in water for 20 minutes.
>
> (G) Step 7: Rest out of water for 15 minutes. Do not towel test site(s).
>
> (H) Step 8: Perform moderate activity in water for 20 minutes.
>
> (I) Step 9: Allow test sites to dry completely without toweling.
>
> (J) Step 10: Apply the SPF standard as described in paragraph (d) of this section.
>
> (K) Step 11: Expose test sites to UV doses as described in paragraph (e) of this section.

---

[2] The FDA extended the compliance dates in the Final Rule for a period of 6 months. *See* 77 Fed. Reg. 27591.

21 CFR §201.327(7).

44.     Accordingly, in order to be compliant with the FDA regulation, Neutrogena Body Mist, which purports to be "water resistant" for 80 minutes, must have an SPF 30 level of protection upon completion of the test proscribed in §201.327(7)(ii).

**C. Recent Announcement Pertaining to Neutrogena's "Water + Sun Barrier" Claims.**

45.     On May 5, 2014, it was reported that a five-member panel of the National Advertising Review Board ("NARB"), the appellate body for advertising industry self-regulation, recommended that Neutrogena discontinue claims that its Neutrogena Beach Defense Sunscreens provide a "water + sun barrier."   *See* http://www.asrcreviews.org/2014/05/narb-panel-recommends-neutrogena-discontinue-water-sun-barrier-claim-for-its-beach-defense-sunscreen/ (last visited June 4, 2014).

46.     Prior to review by the NARB, the National Advertising Division ("NAD"), an investigative unit of the advertising industry's system of self-regulation, which is administered by the Council of Better Business Bureaus, determined that the "water + sun barrier" claim reasonably conveyed that Neutrogena Beach Defense Sunscreens were waterproof and/or provide complete protection from the sun.  Accordingly, the NAD determined that the claim was not supported by the record and recommended that the claim be discontinued.   *Id.*

47.     After appealing the finding to the NARB, the NAD's determination was affirmed. Specifically, the NARB panel found that the term "barrier" could be viewed as a product type or descriptor, and thus, would reasonably be understood by many consumers to indicate the degree of protection provided by Neutrogena Beach Defense Sunscreens.  Thus, the NARB panel noted that at least one of the messages reasonably conveyed was that the products completely block water, as well as the sun's rays.  As determined by the NAD, the NARB held that Neutrogena

did not provide a reasonable basis for the "barrier" claim and recommended that Neutrogena discontinue the claim.  *Id.*

48.     According to the report, Neutrogena agreed that Neutrogena Beach Defense Sunscreens do not completely block water and the sun.  *Id.*

49.     Although Neutrogena may have recently removed the "water + sun barrier" claim from the labels of newly manufactured Neutrogena Beach Defense Sunscreens, as of the date of this Complaint, Neutrogena Beach Defense Sunscreens bearing the "water + sun barrier" claim on their labels are still widely sold throughout the United States, including in Florida.

**D.  Sunscreens Bearing SPFs Higher than SPF 50**

50.     As noted above, the SPF value indicates the amount of sunburn protection provided by the Sunscreen.  Sunscreens are required to be tested according to a SPF test protocol.

51.     The SPF measures the amount of time it will take for a person to sunburn using a Sunscreen compared to exposure without any Sunscreen protection.  For example, if it takes 10 minutes to burn without a Sunscreen and 150 minutes to burn with a Sunscreen, then the SPF of that Sunscreen is 15 (150/10).

52.     The SPF testing protocol is based on exposure to UVB radiation and, thus, SPF values only indicate a Sunscreen's UVB protection.

53.     Consumers reasonably expect that higher SPF values mean greater sun protection. For instance, consumers reasonably assume that Sunscreens with a SPF of 100+ (like Neutrogena's Ultimate Sport® Spray Sunscreen Broad Spectrum SPF 100+) provide twice the protection of a Sunscreen with a SPF of 50.

54.     However, according to the FDA, there is no scientific benefit to using a Sunscreen with a SPF over 50.  The FDA has stated that the "record continues to lack data demonstrating that Sunscreens with SPF values above 50 provide additional clinical benefit compared to SPF 50 products." 76 Fed. Reg. 35672.

55.     Scientific testing shows that properly applied SPF 50 Sunscreen blocks 98% of sunburn rays while SPF 100 blocks 99%.  This difference is inconsequential and provides no clinical benefit to consumers seeking sun protection.

56.     Indeed, the FDA has proposed a rule which would require Sunscreens that have SPF values higher than 50 to be labeled simply as "SPF 50+." 76 Fed. Reg. 35672.

57.     Consumers purchase high SPF Sunscreens assuming that the products will allow them to stay in the sun longer, overexposing themselves to both UV rays.

58.     Neutrogena seeks to capitalize on consumers' false sense of security by selling their Neutrogena High SPF Sunscreens at higher prices than comparable products, including Neutrogena SPF 50 Sunscreens.

59.     The active ingredients of the Neutrogena High SPF Sunscreens are identical to Neutrogena SPF 50 Sunscreens.  Other than the SPF value, the labels of the Neutrogena High SPF Sunscreens make nearly identical representations that the products provide broad spectrum protection against UVA and UVB sun rays.

60.     Neutrogena's SPF 55, 60, 70, 85, 100, and 110 representations on its Neutrogena High SPF Sunscreens labels and marketing materials are false, misleading, and reasonably likely to deceive consumers.  The FDA has stated that it is "concerned that labeling a product with a specific SPF value higher than 50 would be misleading to the consumer." 76 Fed. Reg. 35672.

### E.  Neutrogena's Labeling and Advertising Practices.

61.     Neutrogena has extensively marketed its Neutrogena Body Mist in order to cultivate an image and perception that the product protects the skin against all the sun's harmful UV rays and remains effective for 80 minutes regardless of the amount of the product's exposure to or immersion in water or contact with sweat.  Likewise, Neutrogena has spent millions of dollars marketing its Neutrogena Beach Defense Sunscreens in order to cultivate an image and perception that the product provides waterproof protection and a barrier from the sun's harmful UV radiation.

62.     Fully aware of its consumers' expectations, Neutrogena has misrepresented the fact that Neutrogena Body Mist has never provided the represented SPF 30 level of protection after a consumer's exposure to, or immersion in, water or contact with sweat.  Neutrogena has also misrepresented that the Neutrogena Beach Defense Sunscreens have never been waterproof or provided a barrier protection from the sun's harmful UV radiation.

63.     Defendant has deceptively labeled, advertised, marketed and otherwise represented that Neutrogena Body Mist provides "water resistant" protection for 80 minutes against all of the sun's harmful UV rays when, as Neutrogena knew or should have known, that the protection diminished significantly, over time, after exposure to, or immersion in water, or contact with perspiration, and thus, was not truly "water resistant" for 80 minutes under the FDA standard.

64.     A recent study by Consumer Reports found that Neutrogena Body Mist lost a substantial amount of its claimed SPF 30 protection after exposure to, or immersion in, water or contact with perspiration.

65.     Defendant has also deceptively labeled, advertised, marketed and otherwise represented that Neutrogena Beach Defense Sunscreens provide "water + sun barrier" protection against all of the sun's harmful UV rays when, as Neutrogena knew or should have known, that the product did not protect against all of the sun's harmful UV radiation, and that the product's protection from UV rays diminished significantly, over time, and after exposure to, or immersion in, water or contact with sweat, and, thus, was not truly waterproof and did not provide a barrier to the sun's harmful UV radiation.  Moreover, the use of the term "barrier" violates the Final Rule's prohibition on the use of "sunblock" or "similar claims."  *See* 76 Fed. Reg. 35620 at 35661.

66.     Neutrogena has extensively marketed its Neutrogena High SPF Sunscreens in order to cultivate an image and perception that the products provide superior UVB protection than less expensive lower SPF value Sunscreens.

67.     Neutrogena has misrepresented that its Neutrogena High SPF Sunscreens provide superior protection from the sun's UVB rays than lower value SPF 50 Sunscreens.

68.     Were it not for the false and misleading claims set forth above, Plaintiff and members of the proposed Neutrogena Body Mist Class, Florida Neutrogena Body Mist Subclass, Neutrogena Beach Defense Sunscreens Class, and Florida Neutrogena Beach Defense Sunscreens Subclass (defined below) would not have purchased Neutrogena Body Mist and Neutrogena Beach Defense Sunscreens, and/or would not have paid the premium prices charged for them – prices which were based in part on the purported protections falsely  claimed by Neutrogena, as detailed above. Accordingly, Plaintiff and members of these proposed classes suffered economic losses when they purchased the Neutrogena Body Mist and Neutrogena Beach Defense Sunscreens.

69.     Were it not for the false and misleading claims set forth above, Plaintiff and members of the proposed High SPF Class and Florida High SPF Subclass (defined below)would not have purchased Neutrogena High SPF Sunscreens, and/or would not have paid the premium prices charged for the Neutrogena High SPF Sunscreens – prices which were based on the purported superior protection falsely claimed by Neutrogena, as detailed above. Accordingly, Plaintiff and members of these proposed classes suffered economic losses when they purchased the Neutrogena High SPF Sunscreens.

## CLASS ALLEGATIONS

70.     Plaintiff brings this action on behalf of herself and the members of the proposed Classes under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure. The proposed Classes consist of:

A.   All individuals in the United States who, within the applicable statute of limitations preceding the filing of this action, purchased the Neutrogena Body Mist (the "Neutrogena Body Mist Class").

B.   All individuals in the United States who, within the applicable statute of limitations preceding the filing of this action, purchased the Neutrogena Beach Defense Sunscreens (the "Neutrogena Beach Defense Sunscreens Class").

C.   All individuals in the State of Florida who, within the applicable statute of limitations preceding the filing of this action, purchased the Neutrogena Body Mist (the "Florida Neutrogena Body Mist Subclass").

D.   All individuals in the State of Florida who, within the applicable statute of limitations preceding the filing of this action, purchased the Neutrogena Beach Defense Sunscreens (the "Florida Neutrogena Beach Defense Sunscreens Subclass").

E.   All individuals in the United States who, within the applicable statute of limitations preceding the filing of this action, purchased the Neutrogena High SPF Sunscreens (the "High SPF Class").

F.  All individuals in the State of Florida who, within the applicable statute of limitations preceding the filing of this action, purchased the Neutrogena High SPF Sunscreens (the "Florida High SPF Subclass").

All of the above described classes and subclasses are collectively referred to as the "Classes."

71.  Plaintiff reserves the right to modify or amend the definitions of the proposed Classes.

72.  Excluded from the Classes are Neutrogena, its parents, subsidiaries, affiliates, officers and directors, any entity in which Neutrogena has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

73.  The members of the Classes are so numerous that joinder is impractical.  The Classes consist of thousands of members, the precise number which is within the knowledge of and can be ascertained only by resort to Neutrogena's records.

74.  There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

a.  Whether Neutrogena labeled, marketed, advertised and/or sold Neutrogena Body Mist to Plaintiff and those similarly situated using false, misleading and/or deceptive statements or representations, including statements or representations concerning the product's "water resistant" characteristics;

b.  Whether Neutrogena labeled, marketed, advertised and/or sold Neutrogena Beach Defense Sunscreens to Plaintiff and those similarly situated using false, misleading and/or deceptive statements or representations, including statements or representations concerning Neutrogena Beach Defense Sunscreens' "water + sun barrier" protection;

c.      Whether Neutrogena labeled, marketed, advertised and/or sold Neutrogena High SPF Sunscreens to Plaintiff and those similarly situated using false, misleading and/or deceptive statements or representations, including statements or representations concerning Neutrogena High SPF Sunscreens' SPF 55, 60, 70, 85, 100, or 110 protection;

d.      Whether Neutrogena misrepresented material facts in connection with the sales of the Neutrogena Body Mist and Neutrogena Beach Defense Sunscreens;

e.      Whether Neutrogena misrepresented material facts in connection with the sales of the Neutrogena High SPF Sunscreens;

f.      Whether Neutrogena participated in and pursued the common course of conduct complained of herein;

g.      Whether Neutrogena's labeling, marketing, advertising and/or selling of the Neutrogena Body Mist and Neutrogena Beach Defense Sunscreens as "water resistant" and providing a "water + sun barrier" constitutes an unfair and deceptive act or practice in the conduct of business, trade, or commerce under the Florida Deceptive and Unfair Trade Practices Act;

h.      Whether Neutrogena's labeling, marketing, advertising and/or selling of the Neutrogena High SPF Sunscreens as SPF 55, 60, 70, 85, 100, or 110 protection constitutes an unfair and deceptive acts or practices in the conduct of business, trade, or commerce under the Florida Deceptive and Unfair Trade Practices Act;

i.      Whether Neutrogena's labeling, marketing, advertising and/or selling of the Neutrogena Body Mist and Neutrogena Beach Defense Sunscreens as "water resistant" and providing a "water + sun barrier" constitutes a negligent misrepresentation regarding the water resistance and sun blocking characteristics of those products;

j.      Whether Neutrogena's labeling, marketing, advertising and/or selling of the Neutrogena High SPF Sunscreens as SPF 55, 60, 70, 85, 100, or 110 constitutes a negligent misrepresentation regarding the superior sun protection characteristics of those products;

k.      Whether Neutrogena was unjustly enriched as a result of its labeling, marketing, advertising and/or selling of the Neutrogena Body Mist and Neutrogena Beach Defense Sunscreens as "water resistant" and providing a "water + sun barrier";

l.      Whether Neutrogena was unjustly enriched as a result of its labeling, marketing, advertising and/or selling of the Neutrogena High SPF Sunscreens as SPF 55, 60, 70, 85, 100, or 110 and as providing superior sun protection;

m.      Whether Plaintiff and the members of the Classes were harmed by Neutrogena's wrongful acts and omissions, and the measure of damages; and

n.      Whether Plaintiff and the members of the Classes are entitled to equitable relief.

75.     Plaintiff's claims are typical of the claims of the members of the Neutrogena Body Mist Class, Neutrogena Beach Defense Sunscreens Class, Florida Neutrogena Body Mist Subclass, and Florida Neutrogena Beach Defense Sunscreens Subclass because Plaintiff, like all members of these classes, purchased the Neutrogena Body Mist and Neutrogena Beach Defense Sunscreens that falsely conveyed the products were "water resistant" and provided "water + sun barrier" protection, and sustained damages from Neutrogena's wrongful conduct.  Accordingly, Plaintiff has no interests antagonistic to the interests of any other member of these classes.

76.     Plaintiff's claims are typical of the claims of the members of the High SPF Class and Florida High SPF Subclass because Plaintiff, like all members of the High SPF Subclass and Florida High SPF Subclass, purchased a Neutrogena High SPF Sunscreen that falsely conveyed

that it provided superior sun protection than lower SPF Sunscreens, and sustained damages from Neutrogena's wrongful conduct.  Accordingly, Plaintiff has no interests antagonistic to the interests of any other member of these classes.

77.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes, and has retained counsel who is experienced in prosecuting class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

78.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Neutrogena's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

79.     Neutrogena has acted or refused to act on grounds that apply generally to the Florida Neutrogena Body Mist Subclass, Florida Neutrogena Beach Defense Sunscreens Subclass, and Florida High SPF Subclass, thereby making appropriate final injunctive and corresponding declaratory relief with respect to these subclasses as a whole.

80.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Neutrogena. For example, one court might enjoin Neutrogena from performing the challenged acts, whereas

another might not.  Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

81.     The conduct of Neutrogena is generally applicable to the Classes as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole.  As such, the systematic policies and practices of Neutrogena make declaratory relief with respect to the Florida Neutrogena Body Mist Subclass, Florida Neutrogena Beach Defense Sunscreens Subclass, and Florida High SPF Subclass as a whole appropriate.

<u>**COUNT I**</u>
<u>**Violation of the Florida Deceptive and Unfair Trade Practices Act**</u>
**§ 501.201 *et seq*., Fla. Stat.**
**(On Behalf of the Florida Neutrogena Body Mist Subclass, Florida Neutrogena Beach Defense Sunscreens Subclass, and Florida High SPF Subclass)**

82.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 81 above as if fully set forth herein.

83.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") renders unlawful unfair methods of competition, unconscionable acts or practice, and unfair or deceptive acts or practices in the conduct of any trade or commerce.  § 501.204, Fla. Stat.

84.     Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202, Fla. Stat.

85.     Neutrogena, at all relevant times, solicited, advertised, offered, provided and distributed goods in the State of Florida, and thereby was engaged in trade or commerce as defined by § 501.203(8), Fla. Stat.

86.     Plaintiff, and all others similarly situated, at all material times was a consumer as defined by § 501.203(7), Fla. Stat., and is entitled to seek the underlying relief.

87.     Neutrogena's labeling and marketing of the Neutrogena Body Mist and Neutrogena Beach Defense Sunscreens as "water resistant" and providing "water + sun barrier" protection, respectively, constitutes a deceptive act in violation of FDUTPA.

88.     As set forth above, in violation of the FDA's Final Rule, the labeling and marketing of Neutrogena Body Mist as "water resistant" is false, deceptive and misleading because it causes consumers to believe that they would get the declared 30 SPF level of protection from Neutrogena Body Mist while swimming or perspiring for at least 80 minutes when, in fact, they will not get such protection.

89.     As set forth above, the labeling and marketing of Neutrogena Beach Defense Sunscreens as providing "water + sun barrier" protection is false, deceptive and misleading because it causes consumers to believe that the product is waterproof and provides a barrier to all of the sun's harmful UV radiation, when, in fact, the product is not waterproof and does not provide a barrier to all of the sun's harmful UV radiation.

90.     Neutrogena's labeling and marketing of the Neutrogena High SPF Sunscreens as SPF 55, 60, 70, 85, 100, or 110 and providing superior sun protection than lower SPF Sunscreens constitutes a deceptive act in violation of FDUTPA.

91.     As set forth above, the labeling and marketing of Neutrogena High SPF Sunscreens as providing SPF 55, 60, 70, 85, 100, or 110 sun protection is false, deceptive and misleading because it causes consumers to believe that the product provides superior sun protection to the sun's harmful UVB rays than less expensive lower SPF 50 sunscreens.

92.     Neutrogena designed and uses the false, deceptive, and misleading packaging and labeling with intent to sell, distribute and increase the consumption of the Neutrogena Body Mist, Neutrogena Beach Defense Sunscreens, and Neutrogena High SPF Sunscreens.

93.     Neutrogena's violation of the FDUTPA caused Plaintiff and members of the putative Florida Neutrogena Body Mist Subclass, Florida Neutrogena Beach Defense Sunscreens Subclass, and Florida High SPF Subclass to suffer ascertainable losses.

94.     Pursuant to § 501.211(2), Fla. Stat., Plaintiff is authorized to bring a civil action to recover Plaintiff's actual damages, attorneys' fees and court costs, as provided by § 501.2105(1)(3), Fla. Stat, and for and for injunctive and declaratory relief, as provided by § 501.211(1), Fla. Stat.

## COUNT II
### Unjust Enrichment
**(On Behalf of the Neutrogena Body Mist Class, Neutrogena Beach Defense Sunscreens Class, and High SPF Class)**

95.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 81 above as if fully set forth herein.

96.     As a result of Neutrogena's wrongful and deceptive conduct alleged herein, Neutrogena knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by the Plaintiff and members of the Neutrogena Body Mist Class, Neutrogena Beach Defense Sunscreens Class, and High SPF Class when they purchased the Neutrogena Body Mist, Neutrogena Beach Defense Sunscreens, and the Neutrogena High SPF Sunscreens.

97.     In so doing, Neutrogena acted with conscious disregard for the rights of Plaintiff and members of the Neutrogena Body Mist Class, Neutrogena Beach Defense Sunscreens Class, and High SPF Class.

98.     As a result of Neutrogena's wrongful conduct as alleged herein, Neutrogena has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Neutrogena Body Mist Class, Neutrogena Beach Defense Sunscreens Class, and High SPF Class.

99.     Neutrogena's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

100.    Under the common law doctrine of unjust enrichment, it is inequitable for Neutrogena to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Neutrogena Body Mist, Neutrogena Beach Defense Sunscreens, and Neutrogena High SPF Sunscreens to Plaintiffs and members of the Neutrogena Body Mist Class, Neutrogena Beach Defense Sunscreens Class, and High SPF Class.   Neutrogena's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

101.    The financial benefits derived by Neutrogena rightfully belong to Plaintiff and members of the Neutrogena Body Mist Class, Neutrogena Beach Defense Sunscreens Class, and High SPF Class.  Neutrogena should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Neutrogena Body Mist Class, Neutrogena Beach Defense Sunscreens Class, and High SPF Class all wrongful or inequitable proceeds received by Neutrogena.

102.    Plaintiff and members of the Neutrogena Body Mist Class, Neutrogena Beach Defense Sunscreens Class, and High SPF Class have no adequate remedy at law.

## COUNT III
## Negligent Misrepresentation
**(On Behalf of the Neutrogena Body Mist Class, Neutrogena Beach Defense Sunscreens Class, and High SPF Class)**

103.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 81 above as if fully set forth herein.

104.    Intending consumers to rely on its representations, Neutrogena represented, marketed, and sold the Neutrogena Body Mist and Neutrogena Beach Defense Sunscreens as "water resistant" and/or providing "water + sun barrier" protection, each of which is a material fact to Plaintiff and members of Neutrogena Body Mist Class and Neutrogena Beach Defense Sunscreens Class.

105.    Intending consumers to rely on its representations, Neutrogena represented, marketed, and sold the Neutrogena High SPF Sunscreens as providing superior SPF 55, 60, 70, 85, 100, or 110 sun protection, each of which is a material fact to Plaintiff and the High SPF Class.

106.    Neutrogena knew of these misrepresentations when made, made each misrepresentations without knowledge of its truth or falsity, or should have known each representation was false.

107.    Plaintiff and members of the Neutrogena Body Mist Class, Neutrogena Beach Defense Sunscreens Class, and High SPF Class reasonably and justifiably relied on Neutrogena's misrepresentations of fact when they purchased the Neutrogena Body Mist, Neutrogena Beach Defense Sunscreens, or Neutrogena High SPF Sunscreens.

108.    Plaintiff and members of the Neutrogena Body Mist Class, Neutrogena Beach Defense Sunscreens Class, and High SPF Class have suffered damages because they were deceived into buying the Neutrogena Body Mist, Neutrogena Beach Defense Sunscreens, and

Neutrogena High SPF Sunscreens under the false pretenses that the each had the represented characteristics.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the members of the Classes demand a jury trial on all claims so triable and judgment against the Defendant, Neutrogena, as follows:

1. Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23 of a class of all persons who purchased Neutrogena Body Mist bearing the "water resistant" label, Neutrogena Beach Defense Sunscreens bearing the label "water + sun barrier," and/or the Neutrogena High SPF Sunscreens bearing the label of SPF 55, 60, 70, 85, 100, or 110, and appointing Plaintiff as class representative for the Classes and his counsel as Class Counsel;

2. Enjoining Neutrogena, and anyone in active concert with Neutrogena, from continuing the acts and practices complained of herein in the State of Florida pursuant to Count I;

3. Declaring that Neutrogena's marketing of Neutrogena Body Mist as "water resistant" and Neutrogena Beach Defense Sunscreens as providing "water + sun barrier" protection deceptive and/or misleading in the State of Florida pursuant to Count I;

4. Declaring that Neutrogena's marketing of Neutrogena High SPF Sunscreens as providing SPF 55, 60, 70, 85, 100, or 110 sun protection deceptive, and/or misleading in the State of Florida pursuant to Count I;

5. Ordering Neutrogena to pay restitution to Plaintiff and members of the Classes in an amount that is the equivalent to the amounts received by means of Neutrogena's unfair, deceptive, misleading, unconscionable, or negligent acts as referenced in this Complaint, or any other amount authorized by statute;

6.      Ordering Neutrogena to disgorge any ill-gotten benefits received from Plaintiff and members of the Classes as a result of Neutrogena's deceptive or misleading packaging, labeling, and advertising of its Neutrogena Body Mist, Neutrogena Beach Defense Sunscreens, and Neutrogena High SPF Sunscreens;

7.      Awarding reasonable costs and attorneys' fees;

8.      Awarding applicable pre-judgment or post-judgment interest; and

9.      Awarding such other and further relief as the Court may deem necessary or appropriate.

Dated: June 6, 2014.

Respectfully submitted,

**KOPELOWITZ OSTROW P.A.**


By:  _/s/ Jonathan M. Streisfeld_
          Jeffrey M. Ostrow
          Fla. Bar No. 121452
          ostrow@kolawyers.com
          Jonathan M. Streisfeld
          Fla Bar. No. 117447
          streisfeld@kolawyers.com
          Jason H. Alperstein
          Fla. Bar No. 064205
          alperstein@kolawyers.com
          Scott A. Edelsberg
          Fla. Bar No. 100537
          edelsberg@kolawyers.com
          200 S.W. 1st Avenue, 12th Floor
          Fort Lauderdale, FL 33301
          Telephone: (954) 525-4100
          Facsimile: (954) 525-4300

_Counsel for Plaintiff and the Proposed Classes_