# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:14-CV-22113-MGC

NATHAN DAPEER, on behalf of himself and all

others similarly situated,

                Plaintiff,

    v.

NEUTROGENA CORPORATION,

              Defendant.

_____

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant Neutrogena Corporation ("Neutrogena"), through counsel, and pursuant to Rule 12(b)(1), 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7.1, hereby files its Motion to Dismiss and incorporated Memorandum of Law.

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 2

    A.      Plaintiff's Complaint ................................................................................. 2

    B.      Sunscreen Regulatory History ................................................................. 4

III.    ARGUMENT ...................................................................................................... 6

    A.      Legal Standard ......................................................................................... 6

    B.      Plaintiff Lacks Article III Standing .......................................................... 7

        1.      Plaintiff Lacks Standing to Bring Claims on Products He Neither Purchased Nor Used ................................................................................. 7

        2.      Plaintiff Lacks Standing to Seek Injunctive Relief ................................ 10

    C.      Plaintiff's SPF Claims are Preempted by Federal Law ......................... 11

        1.      Plaintiff's SPF claims are expressly preempted under Section 379r of the FDCA ............................................................................................. 12

        2.      Plaintiff's SPF claims are impliedly preempted ...................................... 15

    D.      The Court Should Defer Primary Jurisdiction to the FDA ................................ 17

IV.     CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Allen v. Hylands, Inc.*
   2012 WL 1656750 (C.D. Cal. May 2, 2012) ........................................................8

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997)...............................................................................................9

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...............................................................................................7

*Astiana v. Dreyer's Grand Ice Cream, Inc.,*
   2012 WL 2990766 (N.D. Cal. July 20, 2012).......................................................8

*Axiom Worldwide, Inc. v. Becerra,*
   2009 WL 1347398 (M.D. Fla. May 13, 2009)....................................................17

*B.H. v. Gold Fields Mining Corp.,*
   506 F. Supp. 2d 792 (N.D. Okla. 2007)..............................................................18

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...............................................................................................7

*Bonner v. City of Prichard,*
   661 F.2d 1206 (11th Cir. 1981) (en banc) ..........................................................17

*California Coastal Comm'n v. Granite Rock Co.,*
   480 U.S. 572 (1987).............................................................................................16

*Carrea v. Dreyer's Grand Ice Cream, Inc.,*
   2011 WL 159380 (N.D. Cal. Jan. 10, 2011) ........................................................8

*Carter v. Novartis Consumer Health, Inc.*
   582 F. Supp. 2d 1271 (C.D. Cal. 2008) ..............................................................15

*Cipollone v. Liggett Grp.,*
   505 U.S. 504 (1992).............................................................................................11

*Columbia Gas Transmission Corp. v. Allied Chem. Corp.,*
   652 F.2d 503 (5th Cir. 1981) ..............................................................................17

*Contreras v. Johnson & Johnson Consumer Cos., Inc.,*
   2012 U.S. Dist. LEXIS 186949 (C.D. Cal. Nov. 29, 2012)..................................8

## TABLE OF AUTHORITIES
(continued)

**Page**

*Crozier v. Johnson & Johnson Consumer Cos.*,
   901 F. Supp. 2d 494 (D.N.J. 2012) ...................................................................12, 15

*Davis v. FEC*,
   554 U.S. 724 (2008)............................................................................................7

*English v. Gen. Elec. Co.*,
   496 U.S. 72 (1990)............................................................................................11

*Focus on the Family v. Pinellas Suncoast Transit Auth.*,
   344 F.3d 1263 (11th Cir. 2003) ........................................................................10

*Greenfield v. Yucatan Foods, L.P.*,
   2014 WL 1891140 (S.D. Fla. May 7, 2014) ......................................................17

*In re Horizon Organic Milk Plus DHA Omega–3 Mktg. & Sales Practice Litig.*,
   955 F.Supp.2d 1311 (S.D. Fla. 2013) ...............................................................17

*In re Human Tissue Prods. Liab. Litig.*,
   488 F. Supp. 2d 430 (D.N.J. 2007) ...................................................................19

*Israel v. Baxter Labs.*,
   466 F.2d 272 (D.C. Cir. 1972) ..........................................................................19

*Jallali v. USA Funds*,
   2012 U.S. Dist. LEXIS 113578 (S.D. Fla. Aug. 10, 2012)....................................10

*Johns. v Bayer Corp.*,
   2010 WL 476688 (S.D. Cal. Feb. 9, 2010) .........................................................8

*L.A. v. Lyons*,
   461 U.S. 95 (1983)............................................................................................10

*Lombardo v. Johnson & Johnson Consumer Products Cos.*,
   Case No. 13-60536, Dkt. No. 47, at 5-6 (S.D. Fla. Dec. 19, 2013) ("Order")................ passim

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)....................................................................................6, 7, 9

*Mlejnecky v. Olympus Imaging America Inc.*,
   2011 WL 1497096 (E.D. Cal. Apr. 19, 2011).......................................................8

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)..........................................................................................10

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Oxford Asset Mgmt., LTD v. Jaharis*,
297 F.3d 1182 (11th Cir. 2002) ............................................7

*Physicians Comm. for Responsible Med. v. Gen. Mills, Inc.*,
2006 U.S. Dist. LEXIS 87047 (E.D. Va. Nov. 30, 2006) ......................19

*PLIVA, Inc. v. Mensing*,
131 S. Ct. 2567 (2011) ............................................12, 16

*Prohias v. Pfizer, Inc.*,
490 F. Supp. 2d 1228 (S.D. Fla. 2007) ................................15

*Reilly v. Amy's Kitchen, Inc.*,
2014 U.S. Dist. LEXIS 31594 (S.D. Fla. Mar. 7, 2014) ....................8, 9

*Riegel v. Medtronic*,
552 U.S. 312 (2008) ............................................14

*Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*,
902 F.2d 222 (3d Cir.1990) ............................................18

*Shotz v. Cates*,
256 F.3d 1077 (11th Cir. 2001) ............................................10

*SIG, Inc. v. AT&T Digital Life, Inc.*,
971 F. Supp. 2d 1178 (S.D. Fla. 2013) ................................9

*Stephenson v. Neutrogena Corp.*,
2012 U.S. Dist. LEXIS 105099 (N.D. Cal. July 27, 2012) ....................8

*Taradejna v. Gen. Mills, Inc.*,
909 F.Supp.2d 1128 (D. Minn. 2012) ....................................17

*Toback v. GNC Holdings, Inc.*,
2013 WL 5206103 (S.D. Fla. Sept. 13, 2013) ............................7, 9

*Turpin v. Merrell Dow Pharms., Inc.*,
959 F.2d 1349 (6th Cir. 1992) ............................................18

*U.S. v. W. Pac. R. R. Co.*,
352 U.S. 59 (1956) ............................................17

*Weinberger v. Bentex Pharms., Inc.*,
412 U.S. 645 (1973) ............................................18

# TABLE OF AUTHORITIES
(continued)

Page

*Weinberger v. BenteHynson, Westcott & Dunning, Inc.*,
    412 U.S. 609 (1973)......................................................................................................19

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.*,
    247 F.3d 1262 (11th Cir. 2001) .................................................................................10

**STATE CASES**

*Berenguer v. Warner-Lambert Co.*,
    2003 WL 24299241 (Fla. Cir. Ct. 2003)........................................................12, 14, 15, 16

*Eckler v. Neutrogena Corp.*,
    No. 37-2013-00031556-CTBT-BT-CTL (Los Angeles Superior Court) (Cal. Sup. Ct.
    Oct. 17, 2013) ...................................................................................................................2

*Heller v. Coca-Cola Co.*
    230 A.D. 2d 768 (N.Y. App. Div. 1996) ...........................................................................19

*Kanter v. Warner-Lambert Co.*,
    99 Cal. App. 4th 780 (2002) ...................................................................................14, 15

*Kia Motors Am. Corp. v. Butler*,
    985 So. 2d 1133 (Fla. DCA 2008) .......................................................................................8

*Rollins, Inc. v. Heller*,
    454 So. 2d 580 (Fla. DCA 1984) .......................................................................................9

**FEDERAL STATUTES**

21 U.S.C. § 321(g)(1) ...........................................................................................................4

21 U.S.C. § 379r ...................................................................................1, 2, 12, 14, 15

28 U.S.C. § 2072(b) .............................................................................................................9

**STATE STATUTES**

Fla. Stat. 501.212(1)..........................................................................................................16

Fla. Stat. § 501.212(3)..........................................................................................................9

**RULES**

Fed. R. Civ. P. 12(b)(1)........................................................................................................6

Fed. R. Civ. P. 12(b)(6)......................................................................................................6, 7

**TABLE OF AUTHORITIES**
(continued)

**Page**

Fed. R. Civ. P. 12(f) ...................................................................................................9

Fed. R. Civ. P. 23 ..................................................................................................9, 10

**REGULATIONS**

21 C.F.R. pt. 314 ........................................................................................................4

21 C.F.R. pt. 330 ........................................................................................................4

21 C.F.R. pt. 352 ........................................................................................................4

21 C.F.R. § 10.25(b) .................................................................................................19

21 C.F.R. § 201.327 ........................................................................................... passim

21 C.F.R. § 330.10 .....................................................................................................4

64 Fed. Reg. 27666 .................................................................................................... 6

66 Fed. Reg. 67485 ....................................................................................................4

72 Fed. Reg. 49070 ............................................................................................... 6, 12

76 Fed. Reg. 35620 ........................................................................................... passim

76 Fed. Reg. 35672 ......................................................................................... 6, 13, 18

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Article III ........................................................................................ passim

U.S. Const. Article VI, cl. 2 .....................................................................................11

**MEMORANDUM OF LAW**

## I.    <u>INTRODUCTION</u>

Plaintiff Nathan Dapeer alleges, on behalf of himself and six putative classes, that Neutrogena engaged in "deceptive and misleading labeling and marketing" of Neutrogena® sunscreen products (the "Products").[1]  (Compl. ¶¶ 1-2.)  He asserts three categories of claims under FDUTPA and for common law negligent misrepresentation and unjust enrichment:

> (1) ***SPF claims***.  Plaintiff alleges that the SPF values for Neutrogena "High SPF Sunscreens," which includes sunscreen products with SPF values ranging from 55 to 110, are misleading and that the Products fail to provide greater sun protection than lower SPF sunscreen products.  (*Id.* ¶¶ 11-14.)

> (2) ***Water Resistant claims***.  Plaintiff alleges that Neutrogena Body Mist SPF 30 sunscreen is labeled as providing "water resistant" protection for 80 minutes but fails water resistance standards.  (*Id.* ¶¶ 5-6, 8-9.)

> (3) ***Barrier claims***.  Plaintiff alleges that Neutrogena Beach Defense sunscreens—labeled to provide "water + sun barrier" protection— incorrectly suggest to consumers that they are waterproof and block 100% of UV rays.  (*Id.* ¶¶ 7-8, 10.)

Plaintiff's Complaint should be dismissed in part for three reasons.

***First***, Plaintiff alleges that ***he purchased only two of the more than twenty Products at issue***:  Neutrogena Body Mist SPF 30 and Neutrogena Beach Defense Broad Spectrum SPF 70 Lotion (the "Purchased Products").  (Compl. ¶ 18.)  Plaintiff lacks Article III standing to pursue claims for Products he neither purchased nor used.  Plaintiff also lacks standing to seek injunctive relief because he has not alleged—and, given that he is now aware of the purported misleading statements, could not allege—a risk of future harm.

***Second***, Plaintiff's SPF claims should be dismissed because they are preempted.  Section 379r of the Food, Drug, and Cosmetic Act ("FDCA") expressly preempts state law requirements

---

[1] The Products include:  Neutrogena's Ultra Sheer Body Mist SPF 30, the Neutrogena Beach Defense line of sunscreen products, and nineteen sunscreens that Plaintiff characterizes as "High SPF Sunscreens."  (Compl. ¶¶ 1-2, 2 n.1.)

that are not identical to federal regulations governing over-the-counter drugs like sunscreens.  21

U.S.C. § 379r.  Plaintiff's SPF claims seek to impose liability on Neutrogena for labeling the

Products precisely as the FDA has required:  with the SPF value determined by FDA-mandated

testing.  If SPF test results yield a value greater than 50, that number "shall be prominently"

displayed on the sunscreen product.  21 C.F.R. § 201.327(a).  The FDA has imposed no cap on

SPF values but Plaintiff asks this Court to do so.  As two other courts, including one in this

district, already have found, Plaintiff's SPF claims are preempted.[2]

  ***Third,*** Plaintiff's SPF claims should be dismissed under the primary jurisdiction doctrine.

A cursory review of Plaintiff's Complaint makes clear his SPF claims are best brought before the

FDA:  he makes multiple references to the FDA and cites FDA regulations throughout his

Complaint.  The regulatory history for sunscreen products is extensive, dating back to 1978.  The

regulations are informed by complex scientific and technical studies.  And the FDA is ***currently***

evaluating the additional clinical benefit of high SPF products in real-use conditions.  The FDA

has not always adopted its initial proposals after further review and public commentary.  Absent

deference to the FDA, Neutrogena runs the risk of facing different obligations in different states,

notwithstanding the comprehensive federal regulatory scheme.

## II. BACKGROUND

### A. Plaintiff's Complaint

  Neutrogena manufactures and markets various consumer skin products, including over-

the-counter ("OTC") sunscreen products.  Plaintiff alleges that Neutrogena's inclusion of the

---

[2] *See* Order Granting Motion to Dismiss (in part), *Lombardo v. Johnson & Johnson Consumer Prods. Cos.*, Case No. 13-60536, Dkt. No. 47, at 5-6 (S.D. Fla. Dec. 19, 2013) ("Order"), attached as Ex. A to Neutrogena's Request for Judicial Notice ("RJN") filed concurrently herewith.  *See also* Notice of Ruling, *Eckler v. Neutrogena Corp.*, No. 37-2013-00031556-CTBT-BT-CTL, coordinated in Sunscreen Case, JCCP 4532 (Los Angeles Superior Court) (Cal. Sup. Ct. Oct. 17, 2013) ("California Order") (RJN Ex. B).

"SPF values" on nineteen different high SPF sunscreen products are "false" and "misleading" because these products do not "provide[] superior sun protection than lower SPF Sunscreens" (*e.g.*, Compl. ¶¶ 12, 60, 76), and Neutrogena failed to disclose this to consumers.  (*Id.* ¶ 14.) Plaintiff identifies no other representations in connection with his SPF claims that he  purports to be misleading other than the SPF values.  Plaintiff also claims that Neutrogena's use of the term "water resistant" on its Body Mist SPF 30 product is false and misleading because it "fails water resistance" testing, and its use of the term "water + sun barrier" misleadingly suggests that the Beach Defense products are waterproof and block 100% of UV rays.  (*Id.* ¶¶ 7-8, 10.)

Plaintiff, however, alleges that he purchased only two of the over twenty different products at issue, presumably at some point during the class period, although Plaintiff fails to allege when or where the purchase(s) occurred.  Plaintiff alleges that he would not have purchased the two products but for the allegedly false advertising.  (*Id.* ¶¶ 68, 69.)  Nowhere in the Complaint, however, does Plaintiff allege that he ever purchased, considered purchasing, or plans to purchase any of the other Products referenced in the Complaint.  Indeed, while Plaintiff claims that Neutrogena "extensively marketed" its Products (*id.* ¶¶ 61, 66), Plaintiff never makes any claim that he was exposed to, or relied upon, any other form of advertisements or promotional materials pertaining to any of the Products, other than SPF values, and the "water-resistant" and "water + sun barrier" language on the two Purchased Products' labels.  And while Plaintiff alleges that the nineteen high SPF products' "active ingredients are identical to Neutrogena 50 SPF products" (*id.* ¶59), this is demonstrably false with a cursory look at the Products' labels.  (*See* Declaration of Jaclyn Blankenship ("Blankenship Decl.") filed concurrently herewith, Exs. A-Q.)  Regardless, Plaintiff fails to acknowledge that even if they did contain the same active ingredients (they do not), the Products contain differing

concentrations of active ingredients, are intended for different consumers, for different uses, and that the packaging contains different representations.

Based on these allegations, Plaintiff asserts claims for violations of FDUTPA, negligent misrepresentation, and unjust enrichment.  Plaintiff seeks to certify six classes—three nationwide and three Florida classes—grouped according to whether the individual purchased the Neutrogena Body Mist SPF 30 product, any Neutrogena Beach Defense product, or any of the nineteen High SPF products, respectively.  (*Id.* ¶ 70.)  Plaintiff seeks classwide damages, restitution, disgorgement, and injunctive relief.  (*Id.*, Prayer for Relief.)

### B.   Sunscreen Regulatory History

Neutrogena's sunscreen products are OTC "drugs" regulated by FDA under the FDCA. *See* 21 U.S.C. § 321(g)(1); 105 P.L. 115, Title I, Subtitle B, § 129, 111 Stat. 2331 (Nov. 21, 1997).[3]  The FDA published a Final Monograph regulating the testing and labeling of sunscreen products in 1999,[4] but indefinitely stayed its effective date pending further regulatory review.[5] In 2007, the FDA published a Proposed Amendment to the Final Monograph that revised UVA and UVB testing and labeling requirements, as well as other aspects of the Final Monograph.[6]

The FDA promulgated a Final Rule in 2011 separate from the Final Monograph.[7]  The

---

[3] FDA regulates OTC drugs in one of two ways: by approving New Drug Applications for individual products, or by promulgating a final monograph that specifies the conditions under which a given category of OTC drugs will be "generally recognized as safe and effective."  *See* 21 C.F.R. pt. 314; 21 C.F.R. pt. 330.

[4]*See* 21 C.F.R. § 330.10 (monograph system for OTC drugs); Sunscreen Drug Products For Over-The-Counter Human Use; Final Monograph, 64 Fed.Reg. 27666 (May 21, 1999) (codified at 21 C.F.R. pt. 352).  (RJN Ex. C.)

[5]Sunscreen Drug Products for Over-the-Counter Human Use; Final Monograph; Partial Stay; Final Rule, 66 Fed. Reg. 67485 (Dec. 31, 2001) (RJN Ex. D.).

[6]Sunscreen Drug Products for Over-the-Counter Human Use; Proposed Amendment of Final Monograph, 72 Fed. Reg. 49070 (Aug. 27, 2007) (RJN Ex. E.)

[7]Labeling and Effectiveness Testing; Sunscreen Drug Products for Over-the-Counter Human Use ("Final Rule"), 76 Fed. Reg. 35620, 35621 (June 17, 2011) (codified at 21 C.F.R. § 201.327) (RJN Ex. F.)

Final Rule, among other things, requires sunscreen manufacturers to prominently display SPF values on their labels, as determined by the FDA-mandated testing, with no cap on SPF values. 21 C.F.R. § 201.327(a)(l).  It also requires a product be labeled "Broad Spectrum SPF [value]" where the product passes a separate UVA testing protocol in the Final Rule.  *Id.*  Broad spectrum products can also make additional UVA-related claims.  *Id.*  The Final Rule also permits products to be labeled  "water resistant (40 minutes)" or "water resistant (80 minutes)" where the product passes an interval immersion test codified in the Final Rule.  *Id.* § 201.327(i)(7).

The FDA also published a Proposed Rule to possibly "limit the maximum labeled SPF value for OTC sunscreen drug products to '50+.'"[8]  The FDA stated in the Proposed Rule, "*we are inviting the submission of data demonstrating additional clinical benefit provided by sunscreen products with SPF values greater than 50.*"  *Id.*  Acknowledging the potential confusion the Proposed Rule may create in light of the Final Rule's labeling requirements that impose no such ceiling,[9] the FDA clarified the agency's enforcement policy for these products: "we intend to continue to exercise enforcement discretion for sunscreen products labeled with specific SPF values higher than 50 if those values are determined according to SPF testing as described in [the Final Rule, the 2007 Proposed Amendment or the 1999 Final Monograph], until we issue a final rule based on the 2011 proposed rule."  Enforcement Policy at 6-7 (RJN Ex. I.)

The FDA has never required manufacturers to explain the non-linear nature of the SPF value system.  In the FDA's 1999 Final Monograph, the FDA explicitly stated "nonlinearity of

---

[8]Revised Effectiveness Determination; Sunscreen Drug Products for Over-the-Counter Human Use ("Proposed Rule"), 76 Fed. Reg. 35672 (proposed June 17, 2011) (RJN Ex. G.)

[9]Draft Guidance for Industry on Enforcement Policy for Over-the-Counter Sunscreen Drug Products Marketed Without an Approved Application; Availability, 76 Fed. Reg. 35665 (June 17, 2011) (RJN Ex. H.); Guidance for Industry: Enforcement Policy-OTC Sunscreen Drug Products Marketed Without an Approved Application ("Enforcement Policy") (June 2011) (RJN Ex. I.); *see also* Proposed Rule, 76 Fed. Reg. at 35673 (noting the likely confusion and indicating that the draft guidance will convey agency's enforcement policy).

the SPF rating system is a concept difficult to explain in the limited space on a product label."
64 Fed. Reg. 27666, 27675.  (RJN Ex. C.)  In the FDA's 2007 Proposed Amendment, the FDA
reviewed comments on the SPF value, including one comment stating that the amount of UV
protection afforded by SPF values above 50 is not significantly greater than SPF 50.  72 Fed.
Reg. 49070, 49085.  (RJN Ex. F.)  But the FDA did not require any cap or disclosure about SPF
values in its Final Rule based on the 2007 Proposed Amendment.  In 2011, the FDA again
discussed the nonlinear nature of the SPF rating system, but did not propose requiring
manufacturers to explain this on sunscreen products.  76 Fed. Reg. 35672, 35674.  (RJN Ex. G.)
Similar to the fact that there is no ceiling on SPF values, there is also no requirement to explain
the purported non-linear nature of SPF values.

The FDA's Final Rule codifies the agency's regulation of OTC sunscreen products.  The
FDA expressed its view that its Final Rule preempts "States from issuing requirements related to
the labeling and testing of OTC sunscreen drug products that are different from or in addition to,
or not otherwise identical with a requirement in the final rule."  72 Fed. Reg. 49070, 49109 (RJN
Ex. E); *see also* 76 Fed. Reg. 35620, 35658 (RJN Ex. F).

III.   **ARGUMENT**

   A.   **Legal Standard**

Defendants may challenge claims through a motion to dismiss when the Court lacks
subject matter jurisdiction or when the plaintiff fails to state a claim upon which relief can be
granted.  Fed. R. Civ. P. 12(b)(1), 12(b)(6).  Dismissal under 12(b)(1) is appropriate where the
complaint does not establish jurisdictional standing under Article III of the U.S. Constitution.
Article III confers federal jurisdiction only when there is an actual case or controversy, which
requires that the plaintiff allege:  (1) "injury in fact" that is concrete and particularized and actual
or imminent, not conjectural or hypothetical; (2) injury that is fairly traceable to the challenged

conduct of the defendant; and (3) injury that will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Where Plaintiff cannot demonstrate injury in fact, the Court must dismiss his claims.

Dismissal under Rule 12(b)(6) is also appropriate when Plaintiff fails to allege facts that, if true, would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive dismissal. *Id. See also Oxford Asset Mgmt., LTD v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) ("[C]onclusory allegations . . . will not prevent dismissal."). Unless Plaintiff has pled concrete facts that, if true, would "nudge[] the[] claims across the line from conceivable to plausible," the Court must grant this motion. *Twombly*, 550 U.S. at 570.

### B.    Plaintiff Lacks Article III Standing

#### 1.    Plaintiff Lacks Standing to Bring Claims on Products He Neither Purchased Nor Used.

A plaintiff must have Article III standing "for each claim he seeks to press and for each form of relief that is sought" in federal court. *See Davis v. FEC*, 554 U.S. 724, 734 (2008) (internal citations omitted). He must identify a particularized injury in fact that affected him personally. *Lujan*, 504 U.S. at 560-61. "Particularized" in this context means that the "injury must affect the plaintiff in a personal and individual way." *Id.* at 560 n.1. Here, Plaintiff alleges that he purchased only the two Purchased Products. (Compl. ¶ 18.) Yet, Plaintiff purports to bring claims for eighteen other "High SPF Sunscreens" and the entire line of Neutrogena Beach Defense sunscreen products. Plaintiff cannot conceivably have been injured by Products he did not purchase or use, and thus he does not have standing to bring any claims involving those Products. *See Toback v. GNC Holdings, Inc.*, 2013 WL 5206103, at *4-5 (S.D. Fla. Sept. 13,

2013) (dismissing purported FDUPTA class claims as to unpurchased TriFlex line of products where named plaintiff only purchased one product from that line); *Reilly v. Amy's Kitchen, Inc.,* 2014 U.S. Dist. LEXIS 31594, at *5-7 (S.D. Fla. Mar. 7, 2014) (plaintiff lacked standing for all but three of the sixty products she brought purported FDUTPA class claims for because named plaintiff did not purchase those products).[10]

In addition to the Article III constitutional requirement that applies to all claims in federal court, actual damages are also a required element of each of the Florida causes of action Plaintiff asserts. Because Plaintiff has not suffered any injury with respect to the Products he neither purchased nor used, he has similarly failed to state a claim upon which relief can be granted as to his Florida causes of action. To state a claim under FDUTPA, plaintiff must allege and prove: (1) a deceptive act or unfair practice; (2) causation; and (3) ***actual damages***. *Kia Motors Am. Corp. v. Butler,* 985 So. 2d 1133, 1140 (Fla. DCA 2008) (emphasis added). Actual damages are "the difference in the market value of the product or service in the condition in which it was

---

[10]     Other district courts have similarly dismissed consumer protection claims premised on unpurchased products for lack of Article III standing. *See e.g.*, *Contreras v. Johnson & Johnson Consumer Cos., Inc.*, 2012 U.S. Dist. LEXIS 186949, at *5-6 (C.D. Cal. Nov. 29, 2012) (dismissing purported false and misleading labeling claims for unpurchased sunscreen products); *Stephenson v. Neutrogena Corp.*, 2012 U.S. Dist. LEXIS 105099, at *3 (N.D. Cal. July 27, 2012) (dismissing with prejudice consumer protection claims related to products that plaintiff did not purchase); *Allen v. Hylands, Inc.,* 2012 WL 1656750, at *5 (C.D. Cal. May 2, 2012); *Mlejnecky v. Olympus Imaging Am. Inc.*, 2011 WL 1497096, at *4 (E.D. Cal. Apr. 19, 2011) (dismissing plaintiff's claims regarding unpurchased camera for lack of standing even though the plaintiff alleged that both models had the same underlying defects and the defendant used the same advertisement for all cameras); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011) (no standing where plaintiff did not purchase the products); *Johns. v Bayer Corp.,* 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) ("[Plaintiff] cannot expand the scope of his claims to include a product he did not purchase or advertisements relating to a product that he did not rely upon."). While some courts have allowed these kinds of claims to survive a motion to dismiss where the unpurchased products are 'substantially similar' to the purchased product, *e.g.*, *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012), those courts are in the minority, and regardless, here the Products are markedly dissimilar on their face. *See, e.g.*, Blankenship Decl., Exs. A-Q.

delivered and its market value in the condition in which it should have been delivered[.]"
*Rollins, Inc. v. Heller*, 454 So. 2d 580, 584-85 (Fla. DCA 1984) (FDUTPA "only allows recovery of damages related to the property which was the subject of the consumer transaction.") (citing Fla. Stat. § 501.212(3)).  Similarly, Plaintiff could not state a claim for negligent misrepresentation absent a showing of justifiable reliance and damages, neither of which occur when there is no product purchase.  *See SIG, Inc. v. AT&T Digital Life, Inc.,* 971 F. Supp. 2d 1178, 1196 (S.D. Fla. 2013).

Here, Plaintiff never alleges that he parted with any money or was damaged in any way by the unpurchased Products.  Nor does he claim that he even considered purchasing any of the other Products, saw any advertising for the other Products, or read any of the product packaging or ingredient lists for any of the other Products.  Put simply, Plaintiff cannot have suffered any injury—economic or otherwise—because of products he never purchased or used.  *Lujan*, 540 U.S. at 560-61; *Rollins*, 454 So. 2d at 584; *Reilly*, 2014 U.S. Dist. LEXIS 31594, at *7. Plaintiff's claims related to unpurchased Products should be dismissed with prejudice for lack of standing, or alternatively, stricken pursuant to Rule 12(f).

The result is no different because Plaintiff filed his Complaint as a putative class action. Plaintiff's claims over the unpurchased Products would unquestionably fail if they were brought on an individual basis.  It is a basic principle that the rules of procedure cannot modify or enlarge any underlying substantive rights.  28 U.S.C. § 2072(b).  In *Amchem Prods., Inc. v. Windsor*, the Supreme Court applied this principle to class actions specifically and held:  "Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right.'"  521 U.S. 591, 613 (1997) (quoting, in part 28 U.S.C. § 2072(b)).  *See also*

*Toback,* 2013 WL 5206103, at *4 (deferring standing determination to the class certification stage will yield no different result with respect to unpurchased products).

Here, Plaintiff himself has no cause of action (under any theory of liability) for products he never bought.  Because the Rules Enabling Act, as interpreted by the Supreme Court, prohibits the expansion of substantive rights pursuant to Rule 23 class actions, the fact that Plaintiff filed the instant action as a putative class action does not alter the ultimate outcome—all of Plaintiff's claims related to unpurchased Products should be dismissed.

2.    **Plaintiff Lacks Standing to Seek Injunctive Relief.**

To have standing to pursue a claim for injunctive relief, a federal court plaintiff must demonstrate that he is "realistically threatened by a repetition of [the violation]."  *L.A. v. Lyons*, 461 U.S. 95, 109 (1983).  *See also Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1272 (11th Cir. 2003) ("[W]here a plaintiff seeks prospective injunctive relief, it must demonstrate a 'real and immediate threat' of future injury in order to satisfy the 'injury in fact' requirement") (citing *Lyons,* 461 U.S. at 103-4).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

Where, as here, a plaintiff cannot demonstrate the threat of repetition, his claim for injunctive relief fails.  *See, e.g.*, *Shotz v. Cates*, 256 F.3d 1077, 1081-82 (11th Cir. 2001) (affirming dismissal of complaint for injunctive relief under the ADA for lack of jurisdiction where disabled persons did not allege that they would be returning to the location where they faced the allegedly improper barriers); *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1283-87 (11th Cir. 2001) (affirming dismissal of injunctive-relief claim and explaining that "to have standing to obtain forward-looking relief, a plaintiff must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future"); *Jallali v.*

-10-

*USA Funds*, 2012 U.S. Dist. LEXIS 113578, at *20-21 (S.D. Fla. Aug. 10, 2012) (plaintiff

lacked standing to sue for injunctive relief because while her complaint "contain[ed] facts that

allege[ed] [she] was previously denied due process with respect to wage garnishment, [she did]

not allege facts suggesting an immediate threat of future harm"); Order at 9 ("While Lombardo

sufficiently alleges her past injury, she fails to allege how she will suffer a future injury.

Accordingly, she fails to allege Article III standing to pursue injunctive relief.") (RJN Ex. A).

Plaintiff has not alleged that he intends to purchase any of the Products in the future.  Nor could

he credibly allege that, should he decide to purchase any of the Products in the future, he would

be misled by the SPF values or other labeling claims.[11]  He lacks standing to seek injunctive

relief.

### C.      **Plaintiff's SPF Claims are Preempted by Federal Law**

Plaintiff's SPF Claims are preempted because they directly attack the FDA's regulations

and enforcement policy for OTC sunscreen products.  The Supremacy Clause of the U.S.

Constitution invalidates state laws that conflict with federal law.  U.S. Const. art. VI, cl. 2.;

*Cipollone v. Liggett Grp.*, 505 U.S. 504, 516 (1992) ("state law that conflicts with federal law is

'without effect'") (citation omitted).  "Congress can define explicitly the extent to which its

enactments pre-empt state law," *English v. Gen. Elec. Co.*, 496 U.S. 72, 78 (1990), often referred

to as "express" preemption, or it can "impliedly" preempt state law if such an intent is evidenced

by its enactments.  Congressional intent is thus the "ultimate touchstone of pre-emption

analysis."  *Cipollone*, 505 U.S. at 516 (internal quotations omitted).  Here, Congress

unambiguously indicated its intent to both expressly and impliedly preempt state claims that, like

Plaintiff's state law claims, impose differing or additional sunscreen labeling requirements than

---

[11] Plus, as Plaintiff acknowledged, Neutrogena no longer sells Products with the allegedly
misleading "barrier" claim.  (Compl. ¶ 49.)

those required by current FDA regulations.

The FDA's Final Rule and Enforcement Policy codify the agency's regulation of OTC

sunscreen products and preempt any differing or additional state requirements.  Congress

included an express preemption provision in the FDCA concerning OTC drugs.  *See* 21 U.S.C.

379r.  That provision states, in pertinent part:

> *National uniformity* for nonprescription drugs . . . [N]o State or political subdivision of a
> State may establish or continue in effect any *requirement*--(1) that relates to the
> regulation of a [OTC] drug . . .; and (2) *that is different from or in addition to, or that is
> otherwise not identical with, a requirement under the [FDCA]*.

21 U.S.C. § 379r(a) (emphasis added); *see also Berenguer v. Warner-Lambert Co.*, 2003 WL

24299241, at *4 (Fla. Cir. Ct. 2003) (regulations promulgated pursuant to FDCA are specific

federal requirements under Section 379r); *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F.

Supp. 2d 494, 503-04 (D.N.J. 2012) (FDA's regulations of labeling of antiseptic product preempt

state law claims challenging such labels).  The FDA also expressed its view that its Final Rule

preempts "States from issuing requirements related to the labeling and testing of OTC sunscreen

drug products that are different from or in addition to, or not otherwise identical with a

requirement in the final rule."  72 Fed. Reg. 49070, 49109; *see also* 76 Fed. Reg. 35620.  "The

FDA's views are controlling unless plainly erroneous or inconsistent with the regulations or

there is any other reason to doubt that they reflect the FDA's fair and considered judgment."

*PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567, 2575 (2011) (citations omitted).

> 1. **Plaintiff's SPF claims are expressly preempted under Section 379r of
> the FDCA.**

Plaintiff attempts to impose different requirements from those established by the FDA.

The Final Rule specifies how a sunscreen product's SPF value is determined, and how that

information must be reported on the product label.  Plaintiff does not, nor could he, allege that

any Product fails to accurately display its SPF value per the FDA's testing regulations.  *See* 21

C.F.R. § 201.327(a)(l).  Instead, Plaintiff claims that any SPF values above 50 are "misleading," and that Neutrogena "deceptively labeled, advertised, and marketed its Neutrogena High SPF Sunscreens as providing superior sun protection than less expensive lower SPF sunscreen products," despite their compliance with the Final Rule's testing and labeling requirements.  (*See e.g.*, Compl. ¶¶ 11-14.)  Plaintiff also claims that Neutrogena knew or should have known that the SPF representations of 55, 60, 70, 85, 100 and 110 were false because of the "comprehensive scientific evidence that SPF values higher than 50 provide no demonstrable clinical benefit to consumers."  (*Id.* ¶ 13.)[12]

Contrary to Plaintiff's allegation (*see id.* ¶ 54), the FDA has not made any finding that "there is no scientific benefit to using a Sunscreen with a SPF over 50."  The very publication Plaintiff cites—the Proposed Rule—indicates that the FDA does not currently have sufficient data to support the higher SPF ratings under the benefit-to-risk ratio for the drug.  76 Fed. Reg 35672, 35675.  The FDA stated that the one study submitted to the agency that tested the improved sunburn protection of SPF 85 over SPF 50 on a group of 56 participants was not sufficient on its own to establish a benefit of higher SPF products for all consumers.  76 Fed. Reg. at 35674.  The FDA requested that additional studies be submitted, *id.*, and it has not issued a final rule on the subject.

Plaintiff seeks to impose different labeling requirements than those established by the FDA—namely a SPF cap or some other disclosure about SPF values.  This is precisely what the express preemption provision precludes.  *See*, *e.g.*, Order at 5-6 ("[Plaintiff] claims that the SPF values themselves are misleading. To the extent that [she] challenges the SPF values on the

---

[12] Plaintiff contradicts himself and admits that there is in fact a benefit to higher SPF products: "Scientific testing shows that properly applied SPF 50 Sunscreen blocks 98% of sunburn rays while SPF 100 blocks 99%."  (Compl. ¶ 55.)

labels themselves, those claims are preempted for all products sold on or after June 17, 2011 and

labeled before December 17, 2012. Inclusion of an appropriately derived SPF value on a

sunscreen label is an FDA requirement, and Lombardo may not impose a ceiling on SPF

values.") (RJN Ex. A); California Order at 1 (dismissing similar high SPF claims asserted on

putative class-wide basis on preemption grounds) (RJN Ex. B); *Berenguer*, 2003 WL 24299241

at *5 ("State law [FDUTPA] causes of action for damages constitute 'requirements,'" preempted

under § 379r); *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 795 (2002) ("When a state

law claim, however couched, would effectively require a manufacturer to include additional or

different information on a federally approved label, it is preempted."); *Riegel v. Medtronic*, 552

U.S. 312, 324-325 (2008) (analyzing nearly identical preemption provision concerning medical

devices and holding that common-law duties are "requirements" subject to preemption).

 In *Lombardo*, similar to here, plaintiff alleged that Neutrogena's labeling of its products

with high SPF values misled consumers into believing the products provided additional clinical

benefit for consumers than those of comparable sunscreens with lower SPF values.  (Order at 2.)

The court held that claims challenging the SPF values were preempted because "[i]nclusion of an

appropriately derived SPF value on a sunscreen label is an FDA requirement[.]"  (*Id*. at 6.)  In

*Berenguer*, plaintiffs alleged that defendants misrepresented the effectiveness of their OTC lice

treatment drug products in violation of FDUTPA.  2003 WL 24299241, at *1.  The Florida state

court found that the alleged misrepresentations were "indistinguishable from the statement that

the FDA approved and [] required to be on the [product's] label."  *Id.* at * 3.  Thus, because "an

award of damages here would be an order 'different from,' 'in addition to,' and 'otherwise not

identical with,' the FDA requirement that the medications be labeled as effective 'for the

treatment of head lice,'" the Court found that FDUTPA claims were preempted under Section

379r.  *Id.* at \*5.  A California court addressing similar challenges explained that such consumer claims are "bottomed on the assertion that this [FDA] approved label is no longer accurate or adequate and that the label should be changed or the product banned.  Each cause of action would result in the establishment of a state requirement regarding labeling that would be 'different from' and 'otherwise not identical with' the federally required label … and each is therefore preempted" by section 379r.  *Kanter*, 99 Cal. App. 4th at 796.[13]

That is the crux of what Plaintiff is attempting here—alleging that compliance with *current* federal regulations governing the labeling of OTC sunscreens is inadequate, and that state law requires some further or different disclosures about sun protection.  His SPF claims are expressly preempted.[14]

### 2.    **Plaintiff's SPF claims are impliedly preempted.**

Even absent express preemption, Plaintiff's SPF claims are impliedly preempted because they conflict with the Final Rule and the FDA's Enforcement Policy.  Conflict preemption arises "when it is impossible to comply with both state and federal law, or where the state law stands as

---

[13]Similarly, in *Carter v. Novartis Consumer Health, Inc.*, the court dismissed state law claims for damages and injunctive relief based on allegedly misleading statements about the effectiveness of OTC cough and cold medicines. 582 F. Supp. 2d 1271, 1290 (C.D. Cal. 2008).  Because the challenged statements were based entirely upon FDA-approved labeling and advertising, the Court found that plaintiffs' false and misleading advertising, and unfair and deceptive business practices claims were preempted.  *Id.* at 1277, 1284.  *See also Crozier*, 901 F. Supp. 2d at 504 (holding that plaintiff's state law consumer claims challenging the use of a trademark on an OTC antiseptic products as misleading were preempted because "FDA regulations cover the entire label, including indications of a product's brand name, and thus preempt challenges to a label[.]").

[14] Even if Plaintiff had alleged he was exposed to SPF claims through Neutrogena's advertising (and he does not), those claims would also be preempted because "the alleged advertisements derive from, and largely comport with, the approved label."  *See Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1234 (S.D. Fla. 2007); *Berenguer*, 2003 WL 24299241, at \*5 ("[B]ecause the advertising statements that plaintiffs challenge either 'repeat information contained in the label' or do not 'substantially differ' from statements contained in FDA-approved labels, they 'necessarily challenge' the FDA-approved statements on the labels themselves, and, accordingly, are preempted for the same reason that direct challenges to the statements in the labels would be preempted.") (citations omitted).

an obstacle to the accomplishment of the full purposes and objectives of Congress." *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 581 (1987) (citations omitted). "A determination by a state court that it is unlawful to advertise [products according to FDA regulations] would stand as an obstacle to the accomplishment of Congress' purpose in having the FDA regulate the medications on a uniform, national basis." *See Berenguer*, 2003 WL 24299241, at *5.

The FDA, acting in accordance with its Congressional mandate to regulate sunscreen products, has mandated how SPF values should be determined and what information should be provided to consumers on product labels, to "ensure that these currently marketed sunscreen products are appropriately labeled and tested." 76 Fed. Reg. at 35621. "The FDA's views are controlling unless plainly erroneous or inconsistent with the regulations or there is any other reason to doubt that they reflect the FDA's fair and considered judgment." *See PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567, 2575 (2011) (citations omitted). Plaintiff seeks to impose a different mandate. It is not possible for Neutrogena to comply with FDA requirements to display specific SPF values on product labels where testing indicates such a value, and at the same time comply with the requirement that Plaintiff seeks to establish, which would prohibit displaying SPF values above 50. Plus, the requirements that Plaintiff seeks to impose are currently being vetted by the FDA, and would stand as an obstacle to Congress' mandate that the FDA regulate OTC drugs and establish national uniform standards. As such, Plaintiff's claims conflict with and stand as an obstacle to the accomplishment of Congress' objectives in the FDCA, and are therefore impliedly preempted, in addition to being expressly preempted.[15]

---

[15] Additionally, because the FDA's Final Rule and Enforcement Policy "required or specifically permitted" Neutrogena to label its products with SPF values in excess of 50, Plaintiff's SPF claims are barred by FDUTPA's safe harbor provision. Fla. Stat. 501.212(1) (providing that

**D.**     **The Court Should Defer Primary Jurisdiction to the FDA**

Plaintiff's claims also should be dismissed on primary jurisdiction grounds.  The primary jurisdiction doctrine "comes into play whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body."  *U.S. v. W. Pac. R. R. Co.*, 352 U.S. 59, 64 (1956).  The doctrine allows "agencies [to] pass in the first instance on technical questions of fact uniquely within the agency's expertise and experience, or in cases whose referral is necessary to secure uniformity and consistency in the regulation of business, such as issues requiring the exercise of administrative discretion."  *Axiom Worldwide, Inc. v. Becerra*, 2009 WL 1347398, at *5 (M.D. Fla. May 13, 2009) (quoting *Columbia Gas Transmission Corp. v. Allied Chem. Corp.*, 652 F.2d 503, 520 n. 14 (5th Cir. 1981)[16]).

District courts consider five factors when applying the doctrine of primary jurisdiction: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration and (5) which the FDA has or is actively evaluating.  *See In re Horizon Organic Milk Plus–3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1348 (S.D. Fla. 2013) (citations and internal quotations omitted); *Greenfield v. Yucatan Foods, L.P.*, 2014 WL 1891140, at *4-6 (S.D. Fla. May 7, 2014) (staying on primary jurisdiction grounds because of the FDA's current review of evaporated cane juice on ingredient labels); *Taradejna v. Gen. Mills, Inc.*, 909 F. Supp. 2d 1128, 1135 (D. Minn. 2012) (finding that it would be "imprudent" for the

---

FDUTPA does not apply to "[a]n act or practice required or specifically permitted by federal or state law"); *see Berenguer*, 2003 WL 24299241, at *3.

[16] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Court to substitute its judgment for that of the FDA pending agency revision of the relevant standard).

Here, all these factors are present and weigh in favor of dismissing Plaintiff's claims. Plaintiff is asking this Court to address a variety of technical policy issues that are outside the conventional experience of judges and more properly reserved for agency expertise, including: (1) whether sunscreen products with SPF values above 50, determined using FDA-approved methodology, provide greater sun protection than lower SPF sunscreen products (*id.* ¶ 11); (2) what information pertaining to higher SPF values should be provided to consumers in FDA-approved product labels; and (3) whether the answer should be the same for all products and consumers, including consumers with particular sensitivity to the sun, those who use sunscreen under circumstances requiring particularly strong protection, and those who might not apply the product as thoroughly or as often as directed.  These are the *same* issues that the FDA is actively evaluating in its Proposed Rule, 76 Fed. Reg. at 35672-75.

In order to prevail on his claims, Plaintiff needs to convince this Court to ignore the FDA's already-effective Final Rule (and the related Enforcement Policy), and supplant the FDA in its ongoing rule-making and determine for itself how sunscreen products function when applied by consumers, and how SPF protection should be labeled.  This is precisely what the primary jurisdiction doctrine seeks to avoid.  *See e.g.*, *Weinberger v. Bentex Pharms., Inc.*, 412 U.S. 645, 653-54 (1973); *B.H. v. Gold Fields Mining Corp.*, 506 F. Supp. 2d 792, 805 (N.D. Okla. 2007) ("Primary jurisdiction will often be invoked when a plaintiff seeks injunctive relief, because there is the greatest likelihood that a court's order will interfere with [the] administrative agency's proceedings."); *Turpin v. Merrell Dow Pharms., Inc.*, 959 F.2d 1349, 1352 (6th Cir. 1992) (citing "the difficulty of scientists and hence of judges, lawyers and jurors in knowing

-18-

what reasonable inferences to draw from scientific studies"); *Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 231-232 (3d Cir. 1990) (the appropriate labeling of a cough syrup ingredient was "not properly decided as an original matter by a district court").

*Heller v. Coca-Cola Co.*, is instructive. 230 A.D. 2d 768 (N.Y. App. Div. 1996). There, plaintiffs brought a purported class action against soft drink manufacturers alleging fraud and unjust enrichment, and seeking to compel additional disclosures pertaining to an FDA-approved ingredient. *Id.* Similar to the case here, the FDA established labeling requirements governing soft drinks that did not include the information plaintiffs wanted. The court of appeals affirmed the dismissal of the case on primary jurisdiction grounds, reasoning that the application of the doctrine would "ensure that there will be national uniformity in the labeling of [the ingredient] and will utilize the special expertise of the FDA in evaluating the relevant factors for approving food additives." *Id.* at 770.

Like in *Heller*, Plaintiff seeks here to compel different and additional disclosures that require the "special expertise of the FDA." *Id.* The FDA is currently evaluating the additional clinical benefit of sunscreen products with SPF values above 50. This Court should dismiss Plaintiff's claims on primary jurisdiction grounds. *See id. See also In re Human Tissue Prods. Liab. Litig.*, 488 F. Supp. 2d 430, 432 (D.N.J. 2007) ("Under the doctrine of 'primary jurisdiction,' when an activity is arguably subject to an administrative agency's expertise, such as the FDA, federal courts must defer to the exclusive competence of that agency."). *Accord Weinberger*, 412 U.S. at 653-54.[17]

---

[17]Courts have applied the primary jurisdiction doctrine to dismiss cases involving FDA regulations. *See* 21 C.F.R. § 10.25(b); *Weinberger v. Hynson, Westcott & Dunning, Inc.,* 412 U.S. 609, 627 (1973) ("The heart of the new procedures designed by Congress is the grant of primary jurisdiction to FDA, the expert agency it created."); *Israel v. Baxter Labs.*, 466 F.2d 272, 280 (D.C. Cir. 1972) (deferring to FDA because the question of whether a drug is safe and

IV.     **CONCLUSION**

Neutrogena respectfully requests that this Court dismiss or strike claims based on

unpurchased Products and dismiss and/or defer primary jurisdiction of Plaintiff's SPF claims to

the FDA.


Respectfully submitted this 15th day of August, 2014.


HUNTON & WILLIAMS LLP


By: /s/ Jordi C. Martinez-Cid
Samuel A. Danon, FBN 0892671
Abigail M. Lyle, FBN 41384
Jordi C. Martinez-Cid, FBN 100566
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500; Fax: 2460
Email: sdanon, alyle or
j-martinez-cid@hunton.com

---

effective was "most properly for the FDA."); *Physicians Comm. for Responsible Med. v. Gen. Mills, Inc.*, 2006 U.S. Dist. LEXIS 87047, at *2, *23-24 (E.D. Va. Nov. 30, 2006) (dismissing misleading advertising claims because FDA was "better suited" to address the scientific issue presented than the court, and there was "clearly a risk of inconsistent judgments").

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 15, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on counsel for Plaintiff via transmission of Notices of Electronic Filing generated by CM/ECF.

By:  /s/ Jordi C. Martinez-Cid
     Jordi C. Martinez-Cid