UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-22113-Civ-COOKE/TORRES

NATHAN DAPEER, on behalf of
himself and all others similarly situated,

    Plaintiff,

vs.

NEUTROGENA CORPORATION,

    Defendant.
_____/

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS COMPLAINT

THIS MATTER is before me on Defendant's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (ECF No. 21). Plaintiff Nathan Dapeer filed his Opposition to Defendant's Motion to Dismiss Complaint and Incorporated Memorandum of Law (ECF No. 30), to which Defendant Neutrogena Corporation submitted its Reply Brief in Support of its Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (ECF No. 40). Therefore, Defendant's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law is fully briefed and ripe for adjudication. I have reviewed Defendant's Motions to Dismiss, the Response and Reply thereto, the record, and the relevant legal authority. For the reasons provided herein, Defendant's Motion to Dismiss is granted in part and denied in part.

### I. BACKGROUND

Plaintiff Nathan Dapeer ("Plaintiff" or "Mr. Dapeer") brings this action on behalf of himself and all others similarly situated against Defendant Neutrogena Corporation ("Defendant" or "Neutrogena"), seeking monetary damages, restitution, and injunctive and declaratory relief as a result of Neutrogena's alleged deceptive and misleading labeling of a variety of sunscreen products. Plaintiff asserts claims for relief under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count I), as well as under theories of unjust enrichment (Count II) and negligent misrepresentation (Count III).

Plaintiff asserts that he purchased two Neutrogena sunscreens, Neutrogena Ultra Sheer Body Mist, SPF 30 ("Neutrogena Body Mist") and Neutrogena Beach Defense Broad Spectrum SPF 70 Lotion ("Neutrogena Beach Defense") because he believed the following: (1) Neutrogena Body Mist "provided 'water resistant' SPF 30 level protection for a full 80 minutes after application"; (2) Neutrogena Beach Defense "was waterproof and provided 'sun barrier' protection from the sun's harmful UV radiation"; and (3) Neutrogena Beach Defense, a high SPF sunscreen, provided "superior sun protection."  Compl. ¶¶ 18-21.  He claims that he would not have purchased the abovementioned sunscreens had he known that the Neutrogena Body Mist and Neutrogena Beach Defense sunscreens were not "water resistant" for 80 minutes, that they did not provide both water and sun barrier protection from the sun's UV radiation, and that the higher SPF value of the Neutrogena Beach Defense sunscreen did not necessarily mean that it provided superior UVB protection compared to less expensive, lower SPF value products.  *Id.* at ¶¶ 22-23.  Although Plaintiff only purchased two Neutrogena sunscreens, he believes his claims are representative of the claims of a larger class of individuals who purchased similar beach defense and high SPF sunscreens.  His proposed class encompasses over twenty Neutrogena sunscreen products.  *Id.* at ¶¶ 70-81.

Claiming that he bought Neutrogena products as a result of false, misleading, and/or deceptive statements or representations by Neutrogena as to the subject products' water resistance, water and sun barrier protection, and high SPF values, Plaintiff filed suit seeking declarative, injunctive, and monetary relief.  In response, Defendant Neutrogena filed the instant motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Plaintiff's Complaint should be dismissed on standing, preemption, and primary jurisdiction grounds.  Defendant also concurrently filed a request for judicial notice, asking that the Court take judicial notice of other trial court orders, the contents of the Federal Register, and the labels of the products identified in Plaintiff's Complaint.[1]

---

[1] Defendant Neutrogena Corporation introduces a variety of extrinsic evidence in support of its motion to dismiss.  *See* Def.'s Req. Judicial Notice, ECF No. 22.  Generally, a court must convert a motion to dismiss into one for summary judgment under Rule 56 when considering evidence outside of the four corners of the complaint.  Fed. R. Civ. P. 12(d).  However, conversion is not necessary in all instances.  The Eleventh Circuit has held that a district court may consider extrinsic evidence when ruling on a motion to dismiss "if [the extrinsic evidence] is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."  *SFM Holdings, Ltd. v. Banc of Amer. Sec., LLC*, 600 F.3d 1334, 1337; *see also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (stating that "a document central to the complaint that the defense appends to its motion to

## II. LEGAL STANDARDS

### A. Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1)

Defendant Neutrogena, in part, premises its Motion to Dismiss on Rule 12(b)(1) of the Federal Rules of Civil Procedure.[2] When considering a 12(b)(1) challenge, a court is faced with either a facial attack or a factual attack. *See Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint." *Id.* In other words, the allegations themselves reveal that subject matter jurisdiction is deficient. By contrast, factual attacks contest the truth of the allegations, which, by themselves, would be sufficient to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *Morrison*, 323 F.3d at 925 n.5 ("Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings."). In resolving a factual attack, the district court may consider evidence outside the pleading, such as testimony and affidavits. *Morrison*, 323 F.3d at 925 n.5. However, "[f]acial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990)) (internal quotation marks omitted).

In the instant case, Defendant Neutrogena asserts a factual attack, essentially arguing that even if all the allegations in Plaintiff's complaint are true, this Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims regarding products he did not personally purchase. Therefore, I will consider the Complaint, any attachments thereto, as well as evidence both sides produced in deciding whether this Court has jurisdiction to hear this case.

---

dismiss is also properly considered, provided that its contents are not in dispute."). Here, Defendant asks the Court to take judicial notice of two trial court orders (Exhibits A and B), six documents from the Federal Register (Exhibits C through H), an FDA Guidance document (Exhibit I), and the front and back labels of seventeen products identified in Plaintiff's Complaint (Exhibits A through Q). Because these materials have not been disputed by the Plaintiff and because they appear to be central to Plaintiff's claim, Defendant's Request for Judicial Notice (ECF No. 22) is granted, and I shall incorporate the extrinsic documents' contents in determining whether Plaintiff has alleged sufficient facts to state a claim under which relief can be granted.

[2] Fed. R. Civ. P. 12(b)(1) challenges a district court's subject matter jurisdiction, thereby challenging its authority to hear an action or certain claims in an action.

### B. Failure to State a Claim Pursuant to Rule 12(b)(6)

A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. A complaint's factual allegations must be enough to raise a right to relief above speculative level. *Id.* Detailed factual allegations are not required, but a pleading "that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. at 555).

A court need not have to accept legal conclusions in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* When a plaintiff pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *See id.* at 678.

### III.   DISCUSSION

Neutrogena argues the following regarding Plaintiff's claims: (1) Plaintiff lacks standing under Article III of the Constitution to pursue claims for products he neither purchased nor used; (2) Plaintiff lacks standing to seek injunctive relief because he has failed to allege a risk of future harm; (3) Plaintiff's SPF claims should be dismissed because they are preempted; and (4) Plaintiff's SPF claims should be dismissed under the primary jurisdiction doctrine. I will address each argument in turn.

### A. Standing

Neutrogena challenges Plaintiff's standing under Article III of the U.S. Constitution to bring claims on behalf of products he never purchased as well as Plaintiff's standing to seek injunctive relief when he has failed to allege a risk of future harm.

4

### a. *Article III Standing*

In his Complaint, Plaintiff admits to having only purchased Neutrogena Ultra Sheer Body Mist, SPF 30 and Neutrogena Beach Defense Broad Spectrum SPF 70 Lotion, and yet brings claims on behalf of all Neutrogena Beach Defense sunscreens as well as all Neutrogena sunscreens with an SPF of above 50. Neutrogena argues that Plaintiff lacks standing to pursue any claims involving Neutrogena products he did not purchase.

District courts appear to be split on this issue of standing.[3] However, under the law of the Eleventh Circuit, "at least one named plaintiff must establish Article III standing for each class subclaim. In other words, Article III standing of a named plaintiff must be established on a claim-by-claim basis within the Eleventh Circuit, and deferring the standing determination to the class [-] certification stage will yield no different result." *Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103, at *4 (S.D. Fla. Sept. 13, 2013) (citing *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000) (internal citations omitted). In *Toback*, the Court held that the named plaintiff in a consumer class action lacked standing to challenge a non-purchased product because there was no injury-in-fact as to that product, even if he purchased a substantially similar product. *Id.* at *4-5. This interpretation is consistent with other decisions in the Eleventh Circuit. *See Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1288 (11th Cir. 2001) ("[J]ust as a plaintiff cannot pursue an individual claim unless he proves standing, a plaintiff cannot represent a class unless he has standing to raise the claims of the class he seeks to represent."); *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) ("[The] individual injury requirement is not met by alleging 'that injury has been suffered by other, unidentified members of the class to which [the plaintiff] belong[s] and which [he] purport[s] to represent.' *Warth v. Seldin*, 422 U.S. 490, 502 (1975)… Moreover, it is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to just one of many claims he wishes to assert. Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered

---

[3] Compare *Astiana v. Dreyer's Grand Ice Cream, Inc.*, Nos. C-11-2910 EMC, C-11-3164 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012) (permitting class representatives to challenge non-purchased that are "sufficiently similar" to the purchsed products) with *Contreras v. Johnson & Johnson Consumer Co.'s, Inc.*, CV 12-7099-GW (SHx), 2012 U.S. Dist. LEXIS 186949 (C.D. Cal. Nov. 29, 2012) (finding that plaintiff did not have standing to pursue claims concerning products she had not purchased).

the injury that gives rise to that claim.").

Here, Plaintiff lacks Article III standing to bring claims on behalf of the Neutrogena products he did not purchase because he cannot conceivably allege any injuries from products that he never purchased or used. Therefore, all of Plaintiff's claims related to unpurchased products are dismissed.

### b. *Standing to Seek Injunctive Relief*

Neutrogena also argues that Plaintiff lacks standing to seek injunctive relief because he fails to allege that he is threatened by repetition of the injury. Plaintiff responds that under FDUTPA requirements, he "need not allege 'that he intends to purchase any of the [p]roducts in the future.'" Pl.'s Opp. to Def.'s Mot. to Dismiss 11.

Although the FDUTPA allows a plaintiff to pursue injunctive relief even where the individual plaintiff will not benefit from an injunction, *see Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. App. 1st Dist. 2000), it cannot supplant Constitutional standing requirements. Article III of the Constitution requires that a plaintiff seeking injunctive relief allege a threat of future harm. "The Supreme Court has long held that to seek prospective or injunctive relief, plaintiffs (including individually named plaintiffs representing a class) must be able to demonstrate more than mere injury from past wrongs." *Veal v. Citrus World, Inc.*, Case No. 12-801, 2013 U.S. Dist. LEXIS 2620, 2013 WL 120761, at *6 (N.D. Ala. Jan. 8, 2013); *see also O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…if unaccompanied by any continuing, present adverse effects.").

Here, although Plaintiff alleges a past injury, he fails to sufficiently allege a threat of future harm. In fact, Plaintiff acknowledges in his Complaint that Neutrogena "removed the 'water + sun barrier' claim from the labels of newly manufactured Neutrogena Beach Defense Sunscreens." Compl. ¶ 49. Therefore, it would be impossible for Plaintiff to allege any threat of future harm from those products. Accordingly, Plaintiff's claims for injunctive relief are dismissed.

### B. Preemption

The United States Food and Drug Administration ("FDA") regulates sunscreens under the Food, Drug, and Cosmetic Act ("FDCA"). Under the Supremacy Clause of the United States Constitution, federal law is the supreme law of the land and any conflicts

between federal and state law must be resolved in favor of federal law. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) ("[S]tate law that conflicts with federal law is 'without effect.'"). Regardless of the type of preemption, "the purpose of Congress is the ultimate touchstone of pre-emption analysis." *Id.* at 516 (internal quotations omitted). Neutrogena argues that the FDCA expressly and impliedly preempts Plaintiff's claims.

      **a.** *Express Preemption*

According to Neutrogena, Plaintiff's SPF claims are expressly preempted because Plaintiff seeks to impose labeling requirements that differ from those established by the FDA.[4] The FDCA includes an express preemption statute that is broad in scope: "no State…may establish or continue in effect any requirement…(1) that relates to the regulation of [OTC drugs]; and (2) that is different from or in addition to, or that is otherwise not identical with a requirement under the [FDCA]." 21 U.S.C. § 379r.

The FDA heavily regulates the sunscreen industry. Every sunscreen must contain an SPF value derived from FDA-approved testing. 21 C.F.R. § 201.327(a)(1); *see also* Sunscreen Drug Products for Over-The-Counter Human Use; Final Monograph, 64 Fed. Reg. 27688 (May 21, 1999). While the FDA has not yet established a minimum or maximum allowable SPF value, it has promulgated regulations requiring that all SPF values included on sunscreen labels accurately reflect the results of FDA-approved testing. *See id.* However, while there exists no final rule regarding minimum or maximum SPF values, the FDA does have a long history of considering proposed rules that establish a maximum SPF value. The FDA considered maximum SPF values of both 30 and 50, and eventually rejected both proposals. *See* Sunscreen Drug Products for Over-The-Counter Human Use; Final Monograph, 64 Fed. Reg. 27674-27675; *see also* Sunscreen Drug Products for Over-The-Counter Human Use; Final Monograph, 64 Fed. Reg. 67485 (Dec. 31, 2001). Instead, when the FDA issued its Final Rule in June 2011—which remains in effect today—it chose not to establish an official maximum SPF value. *See* Labeling and Effectiveness Testing; Sunscreen Drug Products for Over-The-Counter Human Use, 76 Fed. Reg. 35620, 35621 (June 17, 2011). However, on that same day, the FDA also issued a proposed rule to limit the maximum SPF value to "50+." Revised Effectiveness Determination; Sunscreen Drug

---

[4] As Plaintiff notes in his Response, Neutrogena has failed to challenge Plaintiff's "water resistant" and "barrier" claims on preemption grounds. Therefore, as those arguments have not been fully briefed, I will refrain from addressing them in this Order.

Products for Over-The-Counter Human Use, 76 Fed. Reg. 35672 (proposed June 17, 2011). The FDA issued this proposed rule after finding that it does not yet have sufficient data "to establish that products with SPF values higher than 50 provide additional clinical benefit over SPF 50 sunscreen products." *Id.* Therefore, the FDA solicited further studies on the effectiveness of sunscreens with an SPF value above 50 amid concerns that "labeling a product with a specific SPF value higher than 50 would be misleading to the consumer." *Id.*

Here, Plaintiff claims that he is "not seeking to impose different testing standards or methods for measuring SPF" nor he is "seeking to change the specific way Neutrogena displays the SPF value on the label." Pl.'s Resp. 13. Instead, Plaintiff argues that his complaint addresses "Neutrogena's marketing—the combination of the high SPF ratings with charging a price premium and claiming greater protection" as being "misleading and deceptive to consumers." *Id.* at 14. To the extent that Plaintiff challenges as false and misleading the way that Neutrogena marketed its products—by combining SPF values with higher prices—those claims are not expressly preempted. If Plaintiff were to prevail, Neutrogena's SPF labeling requirements would technically remain unchanged. Neutrogena could still include SPF values of greater than 50 on product labels, but would be precluded from falsely misleading consumers into believing that a higher SPF provides significantly greater clinical protection than sunscreens with an SPF of 50 or lower. *See Lombardo v. Johnson & Johnson Consumer Co.'s, Inc.*, No. 13-60536-Civ-Scola, 2013 U.S. Dist. LEXIS 189043, at *10-11 (S.D. Fla. Dec. 19, 2013); *see also Corra v. Energizer Holdings, Inc.*, 962 F. Supp. 2d 1207, 1214 (E.D. Cal. 2013).

Before moving on to consider Neutrogena's other arguments however, I would like to note that my decision to allow Plaintiff to move forward with his high SPF claims is more a reflection of the standard required when considering a Rule 12(b)(6) motion to dismiss then of my confidence in the underlying merit of Plaintiff's claims. At this stage in the litigation, I must accept all material facts alleged as true and construe them in the light most favorable to the plaintiff. However, Plaintiff should not place a great amount of faith in my decision to allow his high SPF claims to proceed. There remain a great number of questions regarding the viability of Plaintiff's claims and the relief he seeks that will not be as easily overlooked as this case proceeds.

8

      **b.** *Implied (Conflict) Preemption*

      Conflict preemption arises where "(1) compliance with both federal and state regulations is a physical impossibility, or (2) the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 936 (11th Cir. 2013) (internal quotation marks omitted). Neutrogena argues that Plaintiff's SPF claims are impliedly preempted because Plaintiff is attempting to establish labeling requirements that would prohibit the display of SPF values above 50 on Neutrogena's labels, in direct conflict with the labeling requirements laid out in the FDA's Final Rule. However, again, I find that Plaintiff's high SPF claims—that high SPF values combined with a higher price—are not impliedly preempted because Neutrogena will not have to change its actual labeling practices. Instead, if Plaintiff is successful, Neutrogena will not be allowed to couple high SPF values with higher prices, implying that those products provide significantly greater protection then sunscreens with an SPF value of 50 or lower.

    **C. Primary Jurisdiction**

      Neutrogena also argues that Plaintiff's high SPF claims be dismissed under the primary jurisdiction doctrine. Primary jurisdiction "is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993). The "main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation." *Boyes v. Shell Oil Products Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000) (quoting *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1310 (2d Cir. 1990)).

      Neutrogena's main argument in favor of applying the primary jurisdiction doctrine here is the risk of inconsistent rulings due to the FDA's ongoing evaluation of the additional clinical benefits of sunscreen products with SPF values above 50. However, I find that application of the primary jurisdiction doctrine would be inappropriate in this case because Plaintiff's claims rest on a determination of whether Neutrogena's marketing of its high SPF products is false and misleading. "Determining whether a manufacturer has misled

9

consumers is squarely within the judicial function." *Karhu v. Vital Pharm., Inc.*, 2013 U.S. Dist. LEXIS 112613, 2013 WL 4047016, at *4 (S.D. Fla. 2013) (Cohn, J.). Therefore, I will not dismiss Plaintiff's high SPF claims on primary jurisdiction grounds.

## IV. CONCLUSION

Having reviewed all of the arguments regarding the dismissal of Plaintiff's Complaint, along with the record and relevant legal authorities, Defendant Neutrogena's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (ECF No. 21) is **GRANTED** *in part* **and DENIED** *in part* as follows:

1. Plaintiff's claims regarding unpurchased products are **DISMISSED**.
2. Plaintiff's claims for injunctive relief are **DISMISSED**.

**DONE and ORDERED** in chambers, at Miami, Florida, this 25th day of March 2015.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of Record*